[No. 8978–5–II. Division Two. May 29, 1986.]

THE STATE OF WASHINGTON, *Appellant,* v. GARY TYRONE NELSON, *Respondent.*

William H. Griffies, Prosecuting Attorney, and Kathleen Proctor and Barbara L. Corey–Boulet, Deputies, for appellant.

Michael R. Johnson of Department of Assigned Counsel, for respondent.

ALEXANDER, J.—The State appeals an exceptional sentence given to Gary Tyrone Nelson that was below the standard range established by the Sentencing Guidelines Commission. This appeal was argued to a court commissioner pursuant to a motion for accelerated review. RAP 18.15. The Commissioner referred the case to this panel of judges for decision by published opinion because of its apparent value as precedent. After hearing further argument, we reverse.

The State charged Nelson with two counts of first degree robbery and alleged, pursuant to RCW 9.94A.125, that he was armed with a deadly weapon, which would have increased the presumptive sentence. RCW 9.94A.310, .370. According to the record at sentencing, a codefendant, Edward Moore, drove the getaway car, brandished a gun and threatened the robbery victims. Nelson's role was to be present and hold the bag into which the money was placed. After Nelson was arrested, he gave a statement to the police in which he admitted his participation in the robberies of two service stations. The parties negotiated a plea bargain by which Nelson agreed to plead guilty to one count of robbery and to testify truthfully against the codefendant; the prosecution dropped one of the robbery charges and the deadly weapon charge and agreed to recommend a sentence of 36 months, which was within the

standard range of 31 to 41 months. The State further agreed to recommend that Nelson be placed at a prison facility in his home state of Michigan.

At the sentencing hearing the prosecutor lowered his sentencing recommendation to 31 months, because by then the codefendant's trial had taken place and Nelson had fulfilled his pledge to testify truthfully and had otherwise cooperated with authorities. The probation officer who wrote the presentence report recommended that the court sentence below the standard range, stating that under the former sentencing scheme this defendant, who had no criminal record, was the type who might well have received a 20–year deferred or suspended sentence, plus "some county jail time and have him sent back to Detroit, Michigan under the interstate compact." *See* RCW 9.95.270.

After having considered the arguments of counsel for the State and Nelson, a presentence report, and the written and oral statements of Nelson, the sentencing judge imposed an "exceptional sentence" of 1 year in the county jail, with credit for time served, and 2 years of community supervision plus restitution and costs totaling $725. The sentencing judge authorized Nelson's transfer to Michigan to serve his probation upon completion of jail time.

Under RCW 9.94A.210(4), this court's role on review of a sentence outside the standard range is to decide (1) if the record supports the sentencing judge's reasons and if those reasons are "substantial and compelling," RCW 9.94A-.120(2); and (2) if the sentence is neither clearly excessive nor clearly too lenient.

The sentencing judge believed the standard range was simply too severe for Nelson. The judge, emphasized the fact that Nelson grew up in the inner city section of Detroit, Michigan, and yet had no police record and had obtained a high school diploma. The sentencing judge noted also that Nelson had a clean, if unexceptional, Army record. Nelson had sent the judge a letter, which was made part of the record at sentencing, wherein he expressed remorse and explained the robberies as being caused by his

involvement with an undesirable peer group. He further acknowledged that he had been drinking, smoking, and taking drugs with his friends. He said that he was supporting various relatives, including a 2–year–old daughter, and needed money both for that purpose and to support his drug habit. He begged the court for leniency and for the chance to continue his Army career. Evidently touched by the letter and by the remarks of defense counsel, the sentencing judge stated:

I think this is one of the problems with the standard range of sentencing, that it allows very little room for judicial discretion.

I see fellows come in here that are pretty hard–core burglars, in my opinion, and the burglary charges are 0 to 90 days. You get people who molest little children who are out in 14 months. Then I get a fellow like this who comes out of the streets of Detroit and with crime all around him was able to be an exceptional citizen for 18 or 19 years of his life.

He goes into the Army and makes a distinguished career. He is honorable and basically a fine fellow. He goes out with this jerk, [codefendant], this fellow has a gun, and they are going to get some money for beer. It is just a human tragedy. It is so out of keeping with his personality, so out of keeping with his life and, in my judgment, he will never make another mistake. Yet, the Legislature indicates to me that I send him to prison with hard–core people for 31 months.

There is something substantially inappropriate in that regard, although I can certainly understand the Prosecutor's position. You have got to take out of the sentencing any kind of emotion, any kind of personal relationship between the Judge and the people in front of him so that sentencings are equal and just throughout the State.

The judge reduced his reasons to the following pertinent findings of fact and conclusions of law:

### III

That the defendant was originally charged with two counts of Robbery in the First Degree committed on January 21, 1985, and the defendant pled guilty to one count pursuant to plea negotiations.

### IV

That the defendant Gary Nelson testified on behalf of the state at the trial of the co–defendant, Edward L. Moore, Jr.

### V

That the facts disclosed that the participation of the defendant was secondary throughout, in that Edward Moore provided the car used, the weapon used, drove the car, held the weapon, and threatened the victims, and that Gary Nelson did no more than hold a bag into which the money was placed.

### VI

That the defendant has no prior felony or misdemeanor convictions. Standard range is a sentence of 31 to 41 months in the Washington Department of Corrections.

### VII

That the Deputy Prosecuting Attorney, in view of the factors set forth in Finding of Fact III, had agreed at the time of the entry of the plea of guilty to recommend a sentence of 36 months in prison and had recommended at the time of sentencing a standard range sentence of 31 months in prison.

### VIII

That the defendant has no criminal history whatsoever to the court's knowledge, and that the defendant has, prior to this incident, led an honorable life.

### IX

That within the meaning of the example given in RCW 9.94A.390(4), the defendant, with no apparent predisposition to do so, was induced by another to participate in the crime(s).

### X

That the defendant has or will suffer the loss of his military career in addition to any punishment meted out by the court.

#### CONCLUSION OF LAW I

That there are substantial and compelling reasons justifying an exceptional sentence, including: . . . (b) the lack of predisposition to commit the crime; c) the cooperation and assistance provided to the state by the defendant; d) the defendant's secondary role in the acts.

█ The State argues, first, that finding 9 is not supported by the record because the evidence shows that Nel-

son did have a predisposition to commit the crime. This argument rings true. RCW 9.94A.390 lists some of the mitigating and aggravating circumstances that the sentencing judge may consider in deciding whether to impose an exceptional sentence. Among the mitigating factors is "(4) The defendant, with no apparent predisposition to do so, was induced by others to participate in the crime." Although Nelson did not instigate the robbery, he clearly participated in it for his own reasons. In his letter to the sentencing judge, he admitted that he joined in the crime ". . . in order to support my family and drug problem." While his desire to commit the crime may not have been as great as his confederate's, he certainly was predisposed to take part and did so of his own volition. The record does not support this reason given by the sentencing judge.

The State next argues that Nelson's role in the crime does not justify an exceptionally lenient sentence because the Sentencing Reform Act of 1981 treats both principals and accomplices as equally culpable. *See* RCW 9A.08-.030(2)(c); D. Boerner, *Sentencing in Washington* § 9.12(d) (1985). *See also State v. Dault,* 25 Wn. App. 568, 608 P.2d 270, 9 A.L.R.4th 965 (1980) (pre–Sentencing Reform Act of 1981 case). Although another mitigating circumstance in RCW 9.94A.390 is that "(6) The offense was principally accomplished by another person . . .", that statutory recitation goes on, in the conjunctive, to say: "*and* the defendant manifested extreme caution or sincere concern for the safety or well–being of the victim." (Italics ours.) Here, the State argues, the record shows no such caution or concern, and the compound elements of this mitigating factor are not satisfied.

We agree with the State. While the list of aggravating and mitigating factors is illustrative only and not exclusive, *State v. Baker,* 40 Wn. App. 845, 700 P.2d 1198 (1985), it could not be clearer that the Legislature intended lesser participation to be a mitigating circumstance only when it is combined with the concern for the victim. No such concern being manifested, the reason is unsupported by the

record.

Even if a "secondary role," as the sentencing judge described Nelson's participation, can be a mitigating circumstance without being combined with concern for the victim, we do not believe the record reflects such a secondary role. Nelson's participation in the robbery was not so incidental or insignificant that it can be said that he was a lesser participant. As defense counsel conceded, Nelson did wear a disguise when he went into the business being robbed and he held the bag in which the ill–gotten gains were placed. He also joined in the planning of the crime for several hours. Nelson was certainly more than a mere lookout, which a court in another jurisdiction has held to be a mitigating factor. *State v. Benbow,* 309 N.C. 538, 308 S.E.2d 647 (1983). To reason that Nelson's conduct evidenced less culpability than the gunman is pure sophistry; the plain fact is that the two men were in this criminal enterprise together, and we will not "split hairs" in an effort to determine the greater or lesser roles of these two participants.

The court also relied upon the cooperation and assistance provided the State by Nelson. The State argues that Nelson already received the benefit of his bargain and more, because the second robbery count and the deadly weapon charge were both dropped, and the prosecutor reduced his recommendation to 31 months—lower even than had been promised. The sentencing judge is not bound by the prosecutor's sentencing recommendation, *In re Hughes,* 19 Wn. App. 155, 575 P.2d 250 (1978); RCW 9.94A.090(2), and we see no reason why the judge cannot reward the defendant's cooperative attitude further by granting leniency in sentencing. To be sure, the sentencing reform act condones plea bargaining and authorizes the State to change its position in various ways. RCW 9.94A-.080. However, the sentencing judge represents a separate branch of government and has discretion under RCW 9.94A.120(2) and .390 to depart from either a recommended sentence or the standard range for "substantial and com-

pelling reasons . . ."

Although we hold that defendant's cooperation with authorities was properly considered to be a mitigating circumstance in this case, considering the leniency already shown it is hardly a "substantial and compelling reason" justifying departure from the standard range.

Finally, the court's finding that Nelson had no criminal history and had "led an honorable life" is not, in our judgment, a reason which would justify an exceptional sentence. Apparently the sentencing judge ultimately realized this, because he crossed out and initialed a written conclusion to that effect. We assume the court did this, at least in part, because the absence of any prior felony record is already taken into account in the standard range. Reliance upon the offender's criminal history per se would have been improper, because it is factored into the range. *State v. Hartley,* 41 Wn. App. 669, 705 P.2d 821 (1985).

The transcript of the sentencing hearing and findings 6 and 8 suggest that the court may have given some weight to the fact that Nelson had no misdemeanor convictions or arrests. We recognize that although the standard range takes prior felony convictions into account in establishing one's "criminal history" and offender score, it does not take into account prior misdemeanors,[1] arrests, or complaints to police. *See* RCW 9.94A.030(6), (8); RCW 9.94A.330, .360. In the eyes of the sentencing reform act, an offender with no prior arrests would have the same criminal history as one with a string of arrests and misdemeanor convictions, but no felonies. Therefore, an argument can be made that a mitigating circumstance is the defendant's clean arrest and misdemeanor record. The court observed: "He's gone twenty years in the streets of Detroit without ever being arrested to my recollection. That ought to be worth a little

---

[1]The crime of vehicular homicide is an exception. Pursuant to RCW 9.94A-.360, if a conviction is for vehicular homicide, certain serious traffic offenses which are gross misdemeanors are considered as part of the defendant's "criminal history."

something." To the extent the court placed any reliance on this fact, we disagree that it was properly considered.

While the list of mitigating circumstances set forth in RCW 9.94A.390 is meant to be illustrative only, we do not believe that the absence of a record of arrests or misdemeanors is the type of factor that would justify departure from the guideline. The absence of criminal history, while commendable, should be the norm in our society. We do not believe that it is a circumstance that calls for exceptionally favorable treatment at time of sentencing. Further, the fact that this crime–free life was led in Detroit seems to us irrelevant. The sentencing judge heard no evidence that it is more difficult to lead an upright life in Detroit than anywhere else. For the sentencing judge to take judicial notice of that fact seems to us unjustified.

In summary, we do not believe the reasons given by the sentencing judge for the exceptional sentence are supported by the record except for the fact of Nelson's cooperation with authorities. That cooperation, as we have indicated, is not sufficiently substantial and compelling to justify the lenient sentence in this case. It is obvious that the reasons the sentencing judge relied on for imposing an exceptional sentence seemed sufficient to the judge. Under the former statutory scheme for sentencing defendants, such subjective sentencing judgments could not be questioned. However, in adopting the sentencing reform act, the Legislature intended to reduce what it perceived was excessive judicial discretion in sentencing. While the merits of this legislation have been and will be debated, it is clear now that the sentencing judge is not "a knight–errant roaming at will in pursuit of his own ideal of beauty or of goodness." B. Cardozo, *The Nature of the Judicial Process* 141 (1921). Judges of the superior court must now be able to articulate objective and sound reasons which are supported by the record for departing from the presumptive sentencing range. That was not done in this case and the sentence must be reversed.

Since we have concluded that the reasons given by the

court do not support the sentence, it is not necessary for us to determine if the sentence was clearly too lenient and we, thus, decline to do so.

The sentence is reversed and the matter is remanded to the Superior Court for imposition of a sentence within the statutory guidelines.

REED, A.C.J., and PETRICH, J., concur.

Reconsideration denied July 31, 1986.

Review granted by Supreme Court October 29, 1986.