[No. 53116–1.   En Banc.   July 23, 1987.]

THE STATE OF WASHINGTON, *Respondent,* v. GARY
TYRONE NELSON, *Petitioner.*

*Michael R. Johnson* of *Department of Assigned Counsel,* for petitioner.

*John W. Ladenburg, Prosecuting Attorney,* and *Barbara L. Corey–Boulet, Appellate Deputy,* for respondent.

UTTER, J.—Gary Nelson seeks review of a Court of Appeals decision vacating his exceptional sentence and directing the trial court to impose a sentence within the guideline range of RCW 9.94A, the Sentencing Reform Act of 1981 (SRA). At issue is whether the trial court found adequate reasons to impose a sentence below the 31 to 41 months defined as the standard range by the SRA. The Court of Appeals found no evidence to support one finding by the trial court, and held that the second two findings do not describe mitigating factors justifying a nonstandard range sentence.

We affirm the Court of Appeals ruling that Nelson's secondary role in the crime did not constitute a substantial and compelling reason to leave the standard range. However, we agree with the trial court in finding that Nelson

lacked the predisposition to commit the crime. This factor, in combination with Nelson's cooperation and assistance to the State, justifies the exceptional sentence imposed. Nelson's cooperation was helpful in the State's prosecution of his codefendant in the first count and vital in the second, as Nelson provided the only eyewitness identification against his codefendant for that count. We also hold that the sentence was not "clearly too lenient" within the meaning of RCW 9.94A.210(4)(b). Accordingly, we reinstate the exceptional sentence imposed by the trial court.

Gary Nelson joined the Army in 1983. On January 21, 1985, he and Edward Moore, another soldier stationed at Fort Lewis, robbed two service stations in Tacoma. During both robberies, Moore held a gun and demanded money, while Nelson held the bag into which the money was to be placed. Moore also drove the getaway car. After his arrest, Nelson confessed to both robberies, the proceeds of which amounted to less than $300.

The Pierce County Prosecuting Attorney charged Moore and Nelson with two counts of first degree robbery. The State also sought to enhance the defendants' sentences under RCW 9.94A.125 (the deadly weapon statute). Nelson agreed to plead guilty to one count of first degree robbery, without the deadly weapon finding, and to testify against Moore. In exchange, the prosecutor agreed to dismiss the other robbery count and to recommend a term of 36 months (within the standard range of 31 to 41 months). The State agreed further to recommend that Nelson be placed in a prison facility in his home state of Michigan. Nelson's testimony at Moore's trial on two counts of armed robbery was particularly significant, as there was no other eyewitness able to provide positive identification of Moore on one count. At the sentencing hearing, the prosecutor lowered his recommendation to 31 months, in consideration of Nelson's fulfillment of his promise to cooperate fully.

Defense counsel asked the court to impose a sentence below the minimum under the standard range guidelines, as did the probation officer assigned to prepare the presen-

tence report. The sentencing judge agreed with these assessments. During the sentencing hearing, the judge (who had also presided over Moore's bench trial) emphasized the fact that Nelson grew up in the inner–city section of Detroit, Michigan, and yet had no police record (felony, misdemeanor, or arrest) and had obtained a high school diploma. The judge also noted that Nelson had a clean Army record. Defense counsel noted to the judge that Nelson's family in Detroit had expressed concern by calling eight or nine times. Nelson sent the judge a letter, which was made a part of the record at sentencing, wherein Nelson expressed remorse and explained the robberies as being caused by his involvement with an undesirable peer group. Attorneys for both the prosecution and the defense, as well as the probation officer, agreed that the crimes were in all probability isolated incidents in Nelson's life and not likely to recur. The trial judge made several findings to support an exceptional sentence:

### VIII.

[T]he defendant has no criminal history whatsoever . . . and . . . has, prior to this incident, led an honorable life.

### IX.

[W]ithin the meaning of . . . RCW 9.94A.390(4), the defendant, with no apparent predisposition to do so, was induced by another to participate in the crime(s).

### X.

[T]he defendant has or will suffer the loss of his military career in addition to any punishment meted out by the court.

### CONCLUSIONS OF LAW

### I

That there are substantial and compelling reasons justifying an exceptional sentence, including: . . . b) the lack of predisposition to commit the crime; c) the cooperation and assistance provided to the state by the defendant; d) the defendant's secondary role in the acts.

Clerk's Papers, at 18.

The court thus sentenced Nelson to 12 months in the county jail, followed by 2 years of community supervision to be served in Michigan, pursuant to the Interstate Cor-

rections Compact, RCW 72.74. The court also ordered Nelson to make complete restitution to both service stations, as well as court costs, victim assessment, and recoupment for defense attorney's fees. The State appealed to Division Two of the Court of Appeals, which reversed the trial court's decision and remanded for imposition of a sentence within the statutory guidelines.

The three issues presented by Nelson's appeal are (1) whether the reasons supplied by the trial court judge to justify the exceptional sentence are supported by the record and (2) if so, do these reasons justify imposition of a non-standard range as a matter of law? (3) Finally, was the exceptional sentence "clearly too lenient" within the meaning of RCW 9.94A.210(4)(b)?

I

With two limited exceptions,[1] the SRA requires the sentencing court to "impose a sentence within the sentence range for the offense." RCW 9.94A.120(1). The trial court imposed an exceptional sentence under the second statutory exception, which allows a nonstandard sentence if there are "substantial and compelling reasons justifying" such a sentence. RCW 9.94A.120(2). The SRA further provides that whenever a sentence outside the standard range is imposed, the sentencing court must set forth the reasons for its decision in written findings of fact and conclusions of law. RCW 9.94A.120(3). The statute provides a nonexclusive list of "illustrative factors which the court may consider in the exercise of its discretion to impose an exceptional sentence". RCW 9.94A.390. In sentencing Nelson, the trial court relied on one of the mitigating factors listed in this section: the defendant, with no apparent predisposition to do so, was induced by others to participate in the crime. Former RCW 9.94A.390(4). The court also found two reasons not listed under the statute: Nelson's cooperation with the police and prosecutor, and his secondary role

---

[1]The first statutory exception, RCW 9.94A.120(5), is not applicable to Nelson's case.

in the acts.

Appellate review of the trial court's sentence is governed by RCW 9.94A.210(4), which provides in pertinent part:

> To reverse a sentence which is outside the sentence range, the reviewing court must find: (a) Either that the reasons supplied by the sentencing judge are not supported by the record which was before the judge or that those reasons do not justify a sentence outside the standard range for that offense; or (b) that the sentence imposed was clearly excessive or clearly too lenient.

■ The Court of Appeals overturned the trial court under subsection (a) of RCW 9.94A.210(4), and therefore expressly declined to determine, under subsection (b), whether the sentence was "clearly too lenient." Appellate review under subsection (a) is a 2–step process.

> First, the appellate court must decide if the sentencing judge's reasons for imposing an exceptional sentence are supported by the record. As this is a factual determination, the appellate court is to uphold the sentencing judge's reasons if they are not clearly erroneous.

*State v. Nordby,* 106 Wn.2d 514, 517–18, 723 P.2d 1117 (1986).

■ The Court of Appeals examined the first reason offered by the sentencing judge: "the defendant, with no apparent predisposition to do so, was induced by another to participate in the crime." Clerk's Papers, at 18. The Court of Appeals reviewed and rejected this finding of fact in summary fashion:

> Although Nelson did not instigate the robbery, he clearly participated in it *for his own reasons.* In his letter to the sentencing judge, he admitted that he joined in the crime ". . . in order to support my family and drug problem." While his desire to commit the crime may not have been as great as his confederate's, he certainly was predisposed to take part *and did so of his own volition.* The record does not support this reason given by the sentencing judge.

(Italics ours.) *State v. Nelson,* 43 Wn. App. 871, 876, 719 P.2d 961 (1986). The Court of Appeals cited no legal authority for its position, and appears to have simply sub-

stituted its judgment on the question of Nelson's predisposition for that of the trial court because Nelson did not act under duress. The Court of Appeals seems to have confused "predisposition" with "motive." Nelson's letter to the sentencing judge certainly established a need for money. However, such a need does not establish criminal predisposition, measured under the SRA by a history of prior convictions. RCW 9.94A.360.

The distinction between criminal predisposition and motive or intent is sharply drawn in ER 404(b), which prohibits the use of evidence of a person's character in order to prove that he or she acted in conformity therewith on a particular occasion—in other words, his or her propensity to act in a criminal manner. To this general prohibition, however, ER 404(b) excepts and distinguishes other purposes for which character evidence may be admitted "such as *proof of motive,* opportunity, intent," etc. (Italics ours.)

As with the SRA, predisposition in the legal context of the criminal defense of entrapment may be demonstrated by a prior history of criminal behavior. *See State v. Swain,* 10 Wn. App. 885, 890, 520 P.2d 950 (1974); *Sullivan v. United States,* 219 F.2d 760 (D.C. Cir. 1955); Annot., 33 A.L.R.2d 883, 886 (1954). The central inquiry in determining predisposition in entrapment cases is whether the criminal activity originates in the mind of the defendant. RCW 9A.16.070; *State v. Smith,* 101 Wn.2d 36, 677 P.2d 100 (1984). *See also* Park, *The Entrapment Controversy,* 60 Minn. L. Rev. 163, 200 (1976). Here, the record provides unrefuted evidence that the plan for the crime did not originate with Nelson.

In determining any sentence, the trial court may use only such information as is admitted to or acknowledged at the time of sentencing, and "[a]cknowledgment includes not objecting to information stated in the presentence reports." RCW 9.94A.370. Nelson informed the officer who prepared the presentence report that Moore had planned the robberies. There is no contradiction of that allegation anywhere in the record. The sentencing judge further supported his

finding of a lack of criminal predisposition by noting that Nelson had not only a zero offender score under the SRA scoring grid, but that he had a *complete* absence of police contacts, a factor not already accounted for under the SRA. *See State v. Hartley,* 41 Wn. App. 669, 705 P.2d 821, *review denied,* 104 Wn.2d 1028 (1985). The complete lack of misdemeanors, beyond the absence of felonies that renders a zero offender score (*see* RCW 9.94A.360; *see also* Washington Sentencing Guidelines Comm'n, *Sentencing Guidelines Implementation Manual* I-5 (1984)) is appropriate for the sentencing judge to consider, in that it supports a finding that the defendant lacked the predisposition to commit the crimes. The position is consistent with the goal of the SRA, which is to treat people equally, considering their crimes and past history. If the person who has no record at all is to be on par with the person who has an extensive misdemeanor record, then this equality is lacking. *See generally* D. Boerner, *Sentencing in Washington* § 2.5(a) (1985). The comments of the Sentencing Guidelines Commission show that the drafters of the statute realized that such limited use of a defendant's misdemeanor history was appropriate:

> The Commission anticipates that in some instances an offender's history of misdemeanors may be used by the court in selecting a sentence within the standard sentence range *or in departing from the range to administer an exceptional sentence.*

(Italics ours.) *Sentencing Guidelines Implementation Manual* § 9.94A.360 comment, at II-32.

The record provides support for the sentencing judge's finding that Nelson lacked the apparent predisposition to commit the crime. The record contains no contrary evidence on this issue. Applying the "clearly erroneous" standard of review to this factual finding, we uphold the trial court.

The second part of RCW 9.94A.210(4)(a) requires the appellate court to determine, as a matter of law, whether the sentencing judge's reasons justify the imposition of a

sentence outside the presumptive range. These reasons must be "substantial and compelling," RCW 9.94A.120(2), and must take into account factors other than those which are necessarily considered in computing the standard range for the offense. *Nordby,* at 518. Lack of predisposition and inducement by others to commit the crime is one of the mitigating factors listed under RCW 9.94A.390. Therefore, as a matter of law, this factor justifies the imposition of a nonstandard sentence.

## II

■ The Court of Appeals also held that the sentencing judge's two other listed reasons did not justify leaving the sentencing range. The appeals court agreed with the trial court in finding that Nelson's cooperation and assistance to the State in Moore's prosecution was properly considered to be a mitigating circumstance. The Court of Appeals correctly noted that:

> The sentencing judge is not bound by the prosecutor's sentencing recommendation, *In re Hughes,* 19 Wn. App. 155, 575 P.2d 250 (1978); RCW 9.94A.090(2), and we see no reason why the judge cannot reward the defendant's cooperative attitude further by granting leniency in sentencing. To be sure, the sentencing reform act condones plea bargaining and authorizes the State to change its position in various ways. RCW 9.94A.080. However, the sentencing judge represents a separate branch of government and has discretion under RCW 9.94A.120(2) and .390 to depart from either a recommended sentence or the standard range for "substantial and compelling reasons . . ."

*State v. Nelson,* 43 Wn. App. 871, 877–78, 719 P.2d 961 (1986). The Court of Appeals incorrectly concluded, however, that the trial court could not rely on the defendant's cooperation with the State in Nelson's case, because the prosecutor had already factored Nelson's cooperation under the plea bargain agreement into his sentencing recommendation to the court.

Assuring public accountability is the first stated purpose

of the SRA,[2] and a driving force behind the movement for sentencing reform. D. Boerner § 2.4, at 2–29. The sentencing judge must be allowed the independent discretion to consider factors already used by the prosecutor in a plea bargain agreement so that this goal of accountability and visible decisionmaking can be met. The considerations driving this aspect of the SRA were aptly discussed by Boerner:

> With the single exception of jury deliberations, all aspects of the trial process are open to scrutiny, both institutionally and by the public. But that same accessibility does not exist for the eighty–five to ninety percent of convictions which result not from trials but from pleas of guilty. Plea bargaining is the operative method of establishing guilt in Washington, as it is throughout the United States. While the identity of the decisionmaker— the prosecutor—is known, accountability is absent, because both the process and the standards by which plea–bargaining decisions are reached are variable and inaccessible. A wide variety of circumstances are generally accepted as justifying concessions in return for a plea of guilty; yet none were defined by statute. Which justification or combination of justifications operated in any given case was not required to be articulated. While a limited judicial power to regulate the results of this process existed, it was rarely exercised. The sole aspect of the process which is public, the actual entry of the guilty plea, is almost exclusively concerned with the nature of the defendant's willingness to enter the guilty plea and his understanding of his rights and the consequences of the plea. Issues of why the bargain was struck are rarely even acknowledged to exist.

(Footnotes omitted.) D. Boerner, *supra* at 2–29.

Finally, as he had presided at Moore's bench trial, Nelson's sentencing judge was in the best position to assess the role that Nelson's testimony played in Moore's conviction. The trial court properly relied upon Nelson's assistance and cooperation with the authorities as a mitigating factor in

---

[2]"The purpose of this chapter is to make the criminal justice system *accountable to the public* . . ." (Italics ours.) RCW 9.94A.010.

sentencing.

■ The trial court found that Nelson had played a secondary role in the crime. The appeals court held this finding was not supported by the evidence, as do we. The trial court found:

> That the facts disclosed that the participation of the defendant was secondary throughout, in that Edward Moore provided the car used, the weapon used, drove the car, held the weapon, and threatened the victims, and that Gary Nelson did no more than hold a bag into which the money was placed.

Finding of fact 5; Clerk's Papers, at 17. The record, as described by the sentencing court, does not describe a truly secondary role that might justify consideration as a mitigating circumstance in sentencing. Although Nelson did not act as the leader, his participation was in no wise incidental or insignificant. Rather, his behavior during the robbery was fairly typical of a "bag man" for an accomplice whom he knew to be armed. In order for a lesser degree of participation to be considered a mitigating factor, the defendant's participation must be significantly out of the ordinary for the crime in question. The trial court's finding that Nelson played a "secondary role" in the crime charged was clearly erroneous.

Because the Court of Appeals based its resolution of the case on RCW 9.94A.210(4)(a), it declined to address the issue of whether the sentence was "clearly too lenient" under RCW 9.94A.210(4)(b). The parties briefed and argued the issue before the Court of Appeals, however. We find it appropriate to resolve the issue in the interests of justice and in order to fully dispose of the case. RAP 1.2(a); RAP 12.2.

### III

■ RCW 9.94A.120(2) requires that, in imposing a sentence outside the standard range, the sentencing court must consider the purpose of the SRA. The stated goals of the SRA are to assure public accountability in the administration of the criminal justice system by structuring discre-

tionary decisions affecting sentences in order to:

(1) Ensure that the punishment for a criminal offense is proportionate to the seriousness of the offense and the offender's criminal history;

(2) Promote respect for the law by providing punishment which is just;

(3) Be commensurate with the punishment imposed on others committing similar offenses;

(4) Protect the public;

(5) Offer the offender an opportunity to improve him or herself; and

(6) Make frugal use of the state's resources.

RCW 9.94A.010.

The legislative intent that punishment for a criminal offense be proportionate to the seriousness of the offense and the offender's criminal history has been largely achieved by the creation and application of a statewide sentencing grid and criminal history scoring system detailed in RCW 9.94A.310–.420. The Sentencing Guidelines Commission, in its preliminary evaluation of the SRA in its first full year of implementation, 1985, reported that trial judges have been generally successful in remaining within the sentencing ranges deemed appropriate by the Legislature.[3] The SRA contemplates departure from the range in appropriate circumstances, reflecting the legislative determination that "not all exceptional fact patterns can be anticipated". Washington Sentencing Guidelines Comm'n, *Sentencing Guidelines Implementation Manual* § 9.94A.390 comment, at II–38 (1984). In such nonstandard cases, it is appropriate to give consideration to factors beyond numerically measured proportionality. Imposing a penalty which is within the standard range but unduly harsh, considering the circumstances of a case, does not "[p]romote respect for the law by providing punishment which is just". RCW 9.94A.010(2).

---

[3] "Exceptional sentences were imposed in 3.5 percent of all SRA cases in 1985. . . . The number of exceptional sentences was lower than expected by most drafters of the reform and Commission members." D. Fallen, *Preliminary Evaluation of Washington State's Sentencing Reform Act,* at x (1986).

The trial judge imposed upon Nelson an exceptional sentence of 12 months' total confinement in the county jail, followed by 2 years of community supervision to be served in Michigan, under the terms of the Interstate Corrections Compact, RCW 72.74. According to the Sentencing Guidelines Commission's 1986 report, community supervision has been employed in 83 percent of the cases. "Community supervision is somewhat similar to probation supervision under the indeterminate sentencing law, but it does not carry the threat of revocation and subsequent imprisonment."[4] D. Fallen, *Preliminary Evaluation of Washington State's Sentencing Reform Act* 30 (1986). Community supervision exerts a lesser, but still significant, amount of state control over a defendant than does total or partial confinement, as did probation under the former system. The considerations that a court must consider in deciding whether to impose a term of community supervision are analogous, in this respect, to those involved in deciding whether to impose probation.

This court has in some instances found Minnesota cases construing that state's determinative sentencing law helpful in interpreting our own. *See In re Myers*, 105 Wn.2d 257, 266, 714 P.2d 303 (1986). The Minnesota Supreme Court has recognized that the defendant's cooperation with the authorities is a factor to be considered in determining whether he is particularly suited to treatment in a probationary setting. *State v. Trog*, 323 N.W.2d 28, 31 (Minn. 1982). That court has also held that suitability for probationary treatment is a mitigating factor. *See also State v. Heywood*, 338 N.W.2d 243 (Minn. 1983). In deciding

---

[4]Under the prior sentencing scheme, parole revocation proceedings were frequently resorted to, in part because they were so convenient for prosecutors. Compliance with all laws was a universal condition of parole, and the prosecution could resort to revocation of parole in response to the commission of new crimes, bypassing the procedural protections required in a separate prosecution. Dissatisfaction with the lack of fairness to defendants and public accountability made this feature of parole a "significant factor in the passage of the Sentencing Reform Act . . ." D. Boerner § 10.12, at 10–12.

whether to rely on this factor, the court is to focus on the defendant and try to determine whether the presumptive sentence would be best for him and for society. *State v. Wright,* 310 N.W.2d 461, 462 (Minn. 1981); *State v. Van Ruler,* 378 N.W.2d 77, 80 (Minn. Ct. App. 1985). "Factors considered by the trial court may include defendant's age, prior record, remorse, cooperation, attitude in court, and the support of friends or family. *State v. Trog,* 323 N.W.2d at 31." *State v. Van Ruler, supra* at 80. Nelson's date of birth is March 25, 1963. His age, complete absence of prior police contacts, expressions of remorse, cooperation with the State, and evidence of family support satisfy the *Trog* factors listed above.

The criminal justice system serves the purpose of protection of the public by "the twin weapons of social defense, deterrence and incapacitation." D. Boerner § 2.5(b), at 2–34. In Nelson's case, the trial judge, defense counsel, probation officer, and the prosecutor agreed that, as the prosecutor put it, this crime "was an isolated incident." Sentencing Transcript, at 10. Further incarceration is, in all likelihood, not necessary to protect the public. Defense counsel presented evidence that, upon his return to Detroit, Nelson's family would be prepared to provide him (and, presumably, is presently providing) assistance in procuring him a job. The trial court noted that "the defendant has or will suffer the loss of his military career in addition to any punishment meted out by the court." Finding of fact 10; Clerk's Papers, at 18. The goal of offering "the offender an opportunity to improve him or herself" (RCW 9.94A-.010(5)) could not be met by reincarcerating Nelson in Washington. Finally, upholding the sentence imposed by the trial court fulfills the pragmatic goal of making "frugal use of the state's resources." RCW 9.94A.010(6).

In *State v. Pascal,* 108 Wn.2d 125, 138, 736 P.2d 1065 (1987), a majority of this court has held that an abuse of discretion standard of review is to be applied in determining whether an exceptional sentence is "clearly too lenient" under RCW 9.94A.210(4)(b). An abuse of discretion exists

only when no reasonable person would take the position adopted by the trial court. *Griggs v. Averbeck Realty, Inc.,* 92 Wn.2d 576, 599 P.2d 1289 (1979). In light of the recommendations by the prosecutor and the probation officer to impose a lenient sentence, the fact that Nelson has already served a 12–month sentence and has suffered the loss of a military career, the determination by all the court officials involved that Nelson is unlikely to commit another crime, and the possibility for improvement offered to him in Detroit with his family, the trial court's sentence did not amount to an abuse of discretion. The same result obtains under the "halving rule" corollary to the Minnesota "doubling rule" proposed by the dissenting opinion in *Pascal.* Under this theory, exceptionally lenient sentences should generally run for at least half the standard range. In truly exceptional cases such as this, however, where the circumstances of the case and the individual involved compel the court to exercise leniency, a departure of 3 months below half the standard range can withstand appellate review. Accordingly, we reverse the holding of the Court of Appeals, and affirm the sentence imposed by the trial court.

PEARSON, C.J., DOLLIVER, CALLOW, GOODLOE, and DURHAM, JJ., and HAMILTON, J. Pro Tem., concur.

DORE, J. (concurring)—I concur in the result only on the basis that the State of Michigan has assumed the responsibilities of incarceration and rehabilitation of the defendant, and that the taxpayers of this state will be spared any further expense.

ANDERSEN, J., concurs with DORE, J.