[No. 7521-4-III.   Division Three.   March 8, 1988.]

THE STATE OF WASHINGTON, *Respondent*, v. FRANK REECE HARMON, *Appellant*.

*Kenneth Raber* and *Kirschenmann, Devine, Fortier & Raber,* for appellant.

*Jeffrey C. Sullivan, Prosecuting Attorney,* and *Robert N. Hackett, Jr., Deputy,* for respondent.

THOMPSON, A.C.J.—Frank Harmon seeks review of an exceptional sentence of 648 months for first degree murder. We affirm.

Mr. Harmon brutally killed his friend, Mervin Rorie, with a knife. Mr. Rorie's mother discovered her son's slashed body at his home the next morning.

The home yielded evidence of a crime of extraordinary violence. Mr. Rorie was stabbed approximately 64 times, several times in the neck area. The major neck wound was a 7-inch slash that reached the cervical vertebra. There were many other wounds on Mr. Rorie's upper body, arms, shoulders, and hands. Investigators determined that the stabbing began in Mr. Rorie's bedroom where he had been sleeping. Mr. Rorie then ran down a hallway to the bathroom, where investigators found a large amount of blood. The struggle continued in the kitchen and into the adjacent dining room, where Mr. Rorie tried to defend himself with a chair. Mr. Rorie collapsed and died in the living room.

Karen Smith, a friend of Mr. Harmon's, gave the police a statement that the defendant told her he had cut Mr. Rorie's neck at least three times, and that the victim was "jumping around like a chicken with his head cut off— running around the house and trying to hold onto his throat". She further stated Mr. Harmon told her that after Mr. Rorie collapsed, the defendant "waited and then he slit his [Mr. Rorie's] throat again and then waited for an hour until the body quit twitching and he made sure he was all

the way dead and then he cut his throat again real deep to make sure that he was *all* the way dead".

Mr. Harmon entered a guilty plea to first degree murder. Under the Sentencing Reform Act of 1981 (SRA), RCW 9.94A, the standard sentence range for first degree murder for Mr. Harmon was 250 to 333 months. The trial judge ordered an exceptional sentence of 648 months, concluding specifically:

> The evidence of the multiple wounds suffered by the deceased, along with the reported statements of the defendant indicate that Harmon acted with deliberate cruelty toward the victim, that the defendant clearly desired to cause the victim pain and terror before finally causing his death; and the multiple injuries and the manner in which they were inflicted are substantial and compelling reasons to aggravate the sentence of Frank Reese Harmon.

The issues here are whether the court's findings justified the exceptional sentence, and whether the sentence was excessive. A trial court may impose a sentence in excess of the presumptive range under the SRA if it finds, "considering the purpose of this chapter, that there are substantial and compelling reasons justifying an exceptional sentence". RCW 9.94A.120(2). The court must "set forth the reasons for its decision in written findings of fact and conclusions of law." RCW 9.94A.120(3).

Review of a sentence is governed by RCW 9.94A.210(4):

> To reverse a sentence which is outside the sentence range, the reviewing court must find: (a) Either that the reasons supplied by the sentencing judge are not supported by the record which was before the judge or that those reasons do not justify a sentence outside the standard range for that offense; or (b) that the sentence imposed was clearly excessive or clearly too lenient.

Under part (a) of this statute, we first must determine whether the reasons for the exceptional sentence are supported by the record. *State v. Nordby,* 106 Wn.2d 514, 518, 723 P.2d 1117 (1986). Mr. Harmon assigns no error to the trial court's findings and thus they are verities. *State v.*

*Weaver,* 46 Wn. App. 35, 42, 729 P.2d 64 (1986), *review denied,* 107 Wn.2d 1031 (1987). Next, we must determine, as a matter of law, whether the findings justify imposing an exceptional sentence. *Nordby,* at 518. The trial court's reasons for imposing an exceptional sentence may not take into account factors already considered in computing the presumptive range for the offense. *Nordby,* at 518; *State v. Armstrong,* 106 Wn.2d 547, 550–51, 723 P.2d 1111 (1986).

The SRA provides an illustrative, nonexclusive list of factors that may be considered in determining whether to impose an exceptional sentence. *Nordby,* at 516. Among the aggravating factors are:

(1) The defendant's conduct during the commission of the offense manifested deliberate cruelty to the victim.

. . .

(3) The offense was a major economic offense or series of offenses, so identified by a consideration of any of the following factors:

(a) The offense involved multiple victims or multiple incidents per victim;

Former RCW 9.94A.390.

In this case, the court found that Mr. Harmon acted with "deliberate cruelty", and that he inflicted "multiple injuries". (The court's reference to the "manner" in which the injuries were inflicted appears to be a further demonstration of "deliberate cruelty".)

Numerous cases have accepted "deliberate cruelty" as a valid factor to be used in imposing an exceptional sentence. *See State v. Dunaway,* 109 Wn.2d 207, 743 P.2d 1237 (1987); *State v. Holyoak,* 49 Wn. App. 691, 745 P.2d 515 (1987), *review denied,* 110 Wn.2d 1007 (1988); *State v. Altum,* 47 Wn. App. 495, 735 P.2d 1356, *review denied,* 108 Wn.2d 1024 (1987); *State v. Dennis,* 45 Wn. App. 893, 728 P.2d 1075 (1986), *review denied,* 108 Wn.2d 1008 (1987).

Although RCW 9.94A.390 discusses "multiple incidents" only in the context of major economic offenses, the court has approved of application of this factor in noneconomic contexts. In *Armstrong,* at 550, the court held that multiple

incidents can be used as an aggravating factor when a defendant inflicts multiple injuries in the course of a second degree assault. And in *Dunaway,* at 219, the court held that multiple incidents and deliberate cruelty can be used as factors justifying an exceptional sentence for attempted first degree murder, where the defendant shot the victim, partially left the room, then returned to shoot him again.

Mr. Harmon argues, however, that acting deliberately and inflicting multiple injuries prove premeditation, which is an essential element of first degree murder. RCW 9A.32.030(1)(a). Because this factor already has been considered in determining the SRA's standard sentence range, Mr. Harmon argues, it may not be considered again to justify imposing an exceptional sentence.

In a general sense this issue arises whenever the circumstances of a crime give rise to factors that are used to justify an exceptional sentence. The problem for the sentencing judge is in determining which circumstances are inherently a part of the crime, and which may distinguish the crime from others of the same category:

> The Sentencing Guidelines Commission and the Legislature certainly intended the circumstances of the crime to play a role in the exceptional sentence process. The illustrative list of mitigating and aggravating factors in RCW 9.94A.390 is composed of factors which involve the particular nature of the crime and the blameworthiness of the defendant in committing the crime. The solution to this potential dilemma is the adoption of the principle that while factors which truly distinguish the crime from others of the same statutory category may justify an exception, those which are inherent in that class of crimes and do not distinguish the defendant's behavior from that inherent in all crimes of that classification may not.

D. Boerner, *Sentencing in Washington* § 9.6, at 9–13 (1985).

Three recent Washington cases demonstrate this approach. In *State v. Fisher,* 108 Wn.2d 419, 739 P.2d 683 (1987), the defendant was convicted of indecent liberties

with a 5½–year–old child. The court imposed an exceptional sentence based on the vulnerability of the victim. On appeal, the defendant argued that the trial court improperly relied on the victim's youth, because age is an element of the crime. The Supreme Court affirmed the sentence, holding that the trial court properly considered the victim's "special vulnerability" based on the child's "extreme youth". *Fisher,* at 424. In *Holyoak,* the court affirmed an exceptional sentence in the following circumstances:

> Here, the repeated striking of the victim's head with a rock may be considered "deliberately cruel." While one such striking was necessary for charging first degree assault (use of a "deadly weapon") and thus inherent in the crime, the repetitious striking may be considered aggravating. Also, the strangulation, the use of his fist against the victim's head, and the repeated pounding of the victim's head against the cement are all gratuitous, and thus distinguish this assault from a "typical" first degree assault. The aggravating factor of "deliberate cruelty" justified the exceptional sentence.

*Holyoak,* at 696. And in *Altum,* at 503, the multiple penetrations and "gang rape" nature of the crime "went beyond the 'typical' rape" and justified the exceptional sentence.

Premeditation, as distinguished from intent, involves "the mental process of thinking beforehand, deliberation, reflection, weighing or reasoning for a period of time, however short." *State v. Brooks,* 97 Wn.2d 873, 876, 651 P.2d 217 (1982). The time required for premeditation may be very short, provided that it is an "appreciable" period of time. *State v. Griffith,* 91 Wn.2d 572, 577, 589 P.2d 799 (1979). For example, in *State v. Sargent,* 40 Wn. App. 340, 353, 698 P.2d 598 (1985), the defendant's infliction of two blows to the victim's head, "with some interval passing between them", was sufficient to establish premeditation.

Here, Mr. Harmon's conduct went well beyond what was necessary to establish premeditation. He did not merely stab Mr. Rorie twice, with an intervening period of deliberation and reflection. He inflicted 64 knife wounds, over what must have been a considerable period of time. He told

a friend that he had watched the twitching of the dying man's body before slicing the man's neck again, and then again. Surely these facts establish the element of premeditation. But they also establish much more: This was not just a first degree murder; it was a violent, vicious act of deliberate cruelty. The trial court was justified in imposing an exceptional sentence.

Mr. Harmon also contends that the 648–month sentence was "clearly excessive" under RCW 9.94A.210(4)(b). The SRA does not define the phrase "clearly excessive", but the "abuse of discretion" standard of review applies. *State v. Oxborrow,* 106 Wn.2d 525, 529–30, 723 P.2d 1123 (1986). "An abuse of discretion exists only when no reasonable person would take the position adopted by the trial court." *State v. Nelson,* 108 Wn.2d 491, 504–05, 740 P.2d 835 (1987).

In *Nelson,* an issue was whether the trial court's sentence was "clearly too lenient" under RCW 9.94A.210(4)(b). In that analysis, the standard of review also is "abuse of discretion". *State v. Pascal,* 108 Wn.2d 125, 138, 736 P.2d 1065 (1987). Thus, the analysis for either a "clearly excessive" or a "clearly too lenient" argument will be similar, and the court's approach in *Nelson* is helpful here:

> The SRA contemplates departure from the range in appropriate circumstances, reflecting the legislative determination that "not all exceptional fact patterns can be anticipated". Washington Sentencing Guidelines Comm'n, *Sentencing Guidelines Implementation Manual* § 9.94A.390 comment, at II–38 (1984). In such nonstandard cases, it is appropriate to give consideration to factors beyond numerically measured proportionality. Imposing a penalty which is within the standard range but unduly harsh, considering the circumstances of a case, does not "[p]romote respect for the law by providing punishment which is just". RCW 9.94A.010(2).

*Nelson,* at 502. Similarly, imposition of a sentence that is within the standard range but unduly *mild,* considering the circumstances of the crime, does not "'[p]romote respect for the law by providing punishment which is just.'" The trial

court's belief that justice would be served by imposing a 648-month sentence is not a position that "no reasonable person" would take.

As the court observed in *Nelson,* the criminal justice system "serves the purpose of protection of the public by 'the twin weapons of social defense, deterrence and incapacitation.'" *Nelson,* at 504 (quoting D. Boerner § 2.5(b), at 2–34). Here, the trial judge stated that his objective in imposing the 648-month senterce was:

To punish this defendant and to protect the public and the community from any further outbursts of uncontrollable rage, uncontrollable anger or the impulses exhibited by the pictures and the terror in this case and to provide a term long enough to insure that these aggressions and impulses have subsided with age . . .

The trial court, in its discretion, decided that the "incapacitation" weapon was most appropriate in this case. Mr. Harmon points to nothing that indicates this exercise of discretion was abusive. We find no inconsistency between the trial court's finding that Mr. Harmon acted with "deliberate cruelty" and its later reference to Mr. Harmon's "uncontrollable rage, uncontrollable anger".

Finally, Mr. Harmon, in his pro se brief, argues that RCW 9.94A.120(4) establishes a mandatory term for first degree murder, and that the trial court was prohibited from varying that mandatory term. Mr. Harmon fails to observe that the statute establishes a 20-year *minimum* term, and that the prohibition applies only to this *minimum* term. Nothing in the statute precludes a sentence *above* the standard sentence range.

Affirmed.

GREEN and MUNSON, JJ., concur.

Review denied by Supreme Court May 31, 1988.