[Nos. 7086–7–III; 7087–5–III.  Division Three.  November 20, 1986.]

THE STATE OF WASHINGTON, *Respondent,* v. DOUGLAS JAMES DENNIS, ET AL, *Appellants.*

*Richard L. Cease, Public Defender,* and *Steven A. Reich* and *John T. Rodgers, Deputies,* for appellants.

*Donald C. Brockett, Prosecuting Attorney,* and *Clark D. Colwell, Deputy,* for respondent.

McINTURFF, A.C.J.—Douglas Dennis and Gary Cunningham appeal exceptional sentences imposed following their guilty pleas to charges of first degree rape and first degree kidnapping. They question whether there were severe aggravating circumstances justifying durational departures from the presumptive sentences established by the Washington Sentencing Reform Act of 1981. RCW 9.94A. We affirm.

The convictions arose from the following facts: On November 30, 1984, the 17–year–old victim parked her car at the Mead High School parking lot and was leaving the car when Mr. Dennis came up to her and produced what the victim believed was a handgun. Mr. Dennis shoved a BB pistol in her stomach and forced her back into her car. He then got into the victim's car and drove out of the parking lot, followed by Mr. Cunningham in a second car. While driving from the parking lot, Mr. Dennis threatened to kill her. After driving for a considerable time, the second car became inoperable. All three then continued in the victim's car to a location northeast of Spokane.

Defendants stopped the car and began emptying the victim's purse and pulling at her clothes. Despite her resistance, the victim's clothes were removed. Mr. Dennis raped the victim vaginally and anally. Mr. Cunningham then raped her vaginally. The victim was told to dress and was

then left under a tree in a wooded area located about one-half mile from any house. After the defendants left with her car, the victim went to a phone and called her father, who then took her to the hospital. Later that evening the defendants hired an individual to burn the car so the police could not obtain fingerprints.

About a month later, the victim saw the defendants, recognized than as the two who had raped her, and informed law enforcement officials. The defendants were arrested and confessed to the incident.

On February 14, 1985, both defendants pleaded guilty to first degree rape and first degree kidnapping, pursuant to a court–approved plea negotiation. The standard range sentence for Mr. Cunningham was 72 to 96 months and for Mr. Dennis was 67 to 89 months. Even though the prosecutor did not request a sentencing departure, the court opted for two concurrent exceptional sentences of 180 months for each defendant, stating "deliberate cruelty" and the purposeful and thought–out course of conduct as reasons for imposing the exceptional sentences.

### DEPARTURE FROM PRESUMPTIVE SENTENCE

The defendants challenge their sentences, claiming the rape here does not justify a departure from the presumptive sentence because it was no more serious than the "typical" rape. The trial court may depart durationally from a presumptive sentence if the offense involves substantial and compelling circumstances. RCW 9.94A.120(2); *State v. Nordby*, 106 Wn.2d 514, 516, 723 P.2d 1117 (1986). When the defendants appeal such a sentence, this court can reverse only if (a) the reasons given by the sentencing judge are not supported by the record, or (b) those reasons do not justify an exceptional sentence, or (c) the sentence imposed is clearly excessive or too lenient. RCW 9.94A.210(4); *Nordby*, at 517. The court elected to depart from the standard range because the defendants' conduct manifested "deliberate cruelty to the victim" and a "purposeful thought–out course of conduct". Both are factors for depar-

ture given in RCW 9.94A.390, which provides an illustrative, nonexclusive list of aggravating factors.

The sentencing act does not define what conduct manifests deliberate cruelty. The State urges us to adopt the construction pronounced by the Alaska Supreme Court in *Juneby v. State,* 641 P.2d 823, 840 (Alaska Ct. App. 1982), *modified on other grounds,* 665 P.2d 30 (Alaska Ct. App. 1983). There, the court determined "deliberate cruelty" denotes conduct which inflicts physical, psychological or emotional pain as an end in itself. *Juneby,* at 840. We choose not to define at this time what conduct constitutes "deliberate cruelty". Rather, we look to the fundamental guideline of the sentencing act which allows departures from standard sentences when there are substantial and compelling reasons justifying an exceptional sentence and recent guidance from the Washington Supreme Court for appellate review of these exceptional sentences. RCW 9.94A.120(2); *State v. Nordby, supra; State v. Oxborrow,* 106 Wn.2d 525, 723 P.2d 1123 (1986).

The first inquiry of the appellate court is whether the sentencing judge's reasons for imposing an exceptional sentence are supported by the record. RCW 9.94A.210(4); *Nordby,* at 517. This is a factual determination which the appellate court must uphold if the sentencing judge's reasons are not clearly erroneous. *Nordby,* at 518. Here, the trial court found there had been multiple penetrations, both vaginally and anally, and that the defendants had raped the victim in gang fashion. We hold the finding that defendants' conduct manifested "deliberate cruelty to the victim" is supported by the record.

The second part of RCW 9.94A.210(4)(a) requires the appellate court to independently determine, as a matter of law, if the sentencing judge's reasons justify the imposition of a sentence outside the presumptive range. *Nordby,* at 518. Having no Washington cases on point, we examined cases from Minnesota, whose sentencing statute was the model for the Washington Sentencing Reform Act, in which departures have been justified under similar circumstances.

In *State v. Stauffacher,* 380 N.W.2d 843 (Minn. Ct. App. 1986), the court affirmed an exceptional sentence imposed upon one convicted of rape. There, the victim, who had been in a parking lot, was forced into a car, driven to a construction site and alternately and forcibly penetrated in the vagina and anus. The assault lasted nearly an hour. The court concluded that subjecting the victim to two forms of penetration was a permissible aggravating factor justifying an exceptional sentence. *Stauffacher,* at 850 (citing *State v. Van Gorden,* 326 N.W.2d 633, 635 (Minn. 1982)).

Likewise, in *State v. Titworth,* 381 N.W.2d 510 (Minn. Ct. App. 1986), the court affirmed an exceptional sentence for a rape involving multiple (three) penetrations, which occurred in the victim's apartment complex. As noted by the court, "[m]ultiple penetrations have been held to justify aggravation of a sentence on the grounds that the defendant committed the crime of rape in a particularly serious way." *Titworth,* at 512 (citing *Ture v. State,* 353 N.W.2d 518, 522 (Minn. 1984); *State v. Martinez,* 319 N.W.2d 699 (Minn. 1982)). Other Minnesota cases have deemed multiple penetrations an aggravating factor justifying an upward sentencing departure. *State v. Gissendanner,* 343 N.W.2d 668 (Minn. 1984); *State v. Deschampe,* 332 N.W.2d 18 (Minn. 1983).

■ We conclude that given the multiple penetrations, and the fact this was in the nature of a "gang rape", the court was justified in departing from the standard sentence. *See, e.g., State v. Rohda,* 358 N.W.2d 39, 41 (Minn. 1984) (defendant and his accomplice raped individual).[1]

■ Mr. Dennis and Mr. Cunningham also argue the sentences were clearly excessive. In *State v. Oxborrow, supra* at 530, the court held the sentencing court's decision regarding the length of an exceptional sentence should not be reversed as "clearly excessive" absent an abuse of dis-

---

[1]Since we find facts and reasons sufficient to affirm the court's decision to depart from the standard sentence range, we do not address the court's second theory regarding the degree of planning.

cretion. *In re Myers,* 105 Wn.2d 257, 265, 714 P.2d 303 (1986). Under that test, we do not find the sentences clearly excessive.

## DUE PROCESS ALLEGATIONS

The trial court imposed an enhanced sentence although neither the State, nor the investigative officer who prepared the written recommendation to the court, filed or requested an exceptional sentence. Defendants claim that because no notice of the court's intention was given prior to the decision, they were not given a fair opportunity to refute the aggravating factors relied upon and this violated their due process right to a fair hearing. We disagree.

The notice of the possibility of an enhanced penalty was stated in the statement each defendant signed on his guilty plea and in the written plea agreement signed by each defendant. Additionally, and just as essential to the knowing and voluntary nature of the pleas of guilty, is the colloquy with the court. During the colloquy, the court conveyed to the defendants that an enhanced sentence was not precluded by their guilty pleas and the defendants indicated their understanding that an enhanced penalty was possible.[2]

---

[2]Both defendants signed statements on their guilty pleas, which in substance stated: (1) the maximum sentence possible was life imprisonment; (2) no person had made any promises of any kind to induce him to enter the plea agreement except those in his statement; (3) he has been informed and fully understands that the court does not have to follow anyone's recommendation as to sentence, that the court must impose a sentence within the standard sentence range unless the court finds substantial and compelling reasons not to do so. If the court goes outside the standard sentence range, he or the State can appeal that sentence. If the sentence is within the standard sentence, no one can appeal the sentence.

In defendants' plea agreements, which defendants were told about and signed, defendants acknowledged the maximum sentence each could receive is life imprisonment.

In order for the defendants to make a knowing, intelligent plea of guilty, we interpret CrR 4.2(d) and (e) to require that defendants understand the contents of their plea agreements, the consequence of a guilty plea, and the possibility of receiving a sentence outside the standard range. 13 R. Ferguson, Wash. Prac., *Criminal Practice and Procedure* § 3206 (1984) (defendant must be informed by the court of the maximum sentence on the charge, the mandatory minimum sen-

The judgment of the Superior Court is affirmed.

MUNSON and THOMPSON, JJ., concur.

Reconsideration denied January 23, 1987.

Review denied by Supreme Court March 31, 1987.

---

tence and any different or additional punishment the defendant may be subject to as a result of previous convictions); R. Ferguson, § 3211 (the court must advise the defendant which terms in the plea agreement are binding upon the court).

*State v. Barton,* 93 Wn.2d 301, 305, 609 P.2d 1353 (1980) stated the defendant must be informed of all the direct consequences of his plea prior to acceptance of a guilty plea. *Barton,* at 306, held neither due process nor CrR 4.2(d) requires that a defendant entering a guilty plea be advised of the possibility that a habitual criminal charge could be filed against him because it was only a collateral consequence to a guilty plea. "The distinction between direct and collateral consequences of a plea 'turns on whether the result represents a definite, immediate and largely automatic effect on the range of the defendant's punishment'." *Barton,* at 305 (quoting *Cuthrell v. Director,* 475 F.2d 1364, 1366 (4th Cir. 1973)). The possibility of an enhanced penalty is such a direct consequence and therefore must be part of the colloquy between the court and defendant. Thus, a colloquy between the court and the defendant is required to ensure that the defendant understands that the court may impose an enhanced sentence despite the prosecutor's promise not to seek a sentence outside the standard range.

The trial court conducted such a colloquy with Mr. Dennis and Mr. Cunningham upon entry of their guilty pleas. The court informed Mr. Cunningham that the maximum punishment he could receive for first degree rape and first degree kidnapping was life imprisonment and/or a fine of $50,000 or both. The court asked Mr. Cunningham if he understood the maximum penalties, and he answered "Yes, I do." Mr. Cunningham was informed of the standard sentence range and stated he understood this information. Mr. Cunningham also was informed that the law further provides that if a court feels these crimes are so serious that it should not follow these guidelines, it can sentence him up to life imprisonment on each of these counts. Mr. Cunningham again stated he understood. Mr. Cunningham also was informed that his lawyers would have no way of knowing the sentence defendant would receive, that it was up to the judge to pass sentence. To this Mr. Cunningham replied he understood. Following colloquy with Mr. Cunningham, the court conducted a colloquy with Mr. Dennis in which the same information was imparted to him and he affirmed his understanding of that information. Because both defendants were in court during the time the court talked to the other, each heard the information twice. The trial court's colloquy with these defendants was sufficient to ensure their guilty pleas were knowing and intelligent.