[Nos. 8595–0–II; 8596–8–II.   Division Two.   April 27, 1987.]

THE STATE OF WASHINGTON, *Respondent,* v. ROGER G. ALTUM, ET AL, *Appellants.*

496

*Roger G. Altum,* pro se, *David D. Gordon,* and *Gordon, Misner & Robinson,* for appellant Altum (appointed counsel for appeal).

*Ronald D. Heslop* and *Branfield, Heslop & Holzman, P.S.,* for appellant Stallone (appointed counsel for appeal).

*John W. Ladenburg, Prosecuting Attorney,* and *Barbara L. Corey-Boulet, Deputy,* for respondent.

ALEXANDER, A.C.J.—In this consolidated appeal, Darrell Stallone and Roger Altum each appeal their convictions of two counts of first degree rape and one count of second degree robbery. They primarily object to the trial court's imposition of exceptional sentences. We hold that the trial court did not err in imposing the sentences and that the defendants' other assignments of error have no merit. Thus, we affirm.

Before trial on the above stated charges, Stallone, who had made incriminating admissions to police, moved to suppress the evidence of his statements. He claimed that he did not make a knowing and voluntary waiver of his *Miranda* rights at the time he made his statements to the officers. The trial court conducted a hearing pursuant to

CrR 3.5, after which it entered findings of fact and concluded that Stallone's confession was admissible in evidence. Stallone then waived his right to a jury trial.

At the conclusion of Stallone's bench trial, the trial judge made unchallenged findings of fact, which may be summarized as follows:

On October 11, 1984, at about 10:30 p.m., 20–year–old Jane Doe[1] was driving alone to her home on Vashon Island. She missed a highway turnoff and ended up in Gig Harbor. Realizing that she had missed the last ferry to Vashon Island, she stopped at the first telephone she could find, which was outside a closed service station. There, she telephoned her parents to get directions to another ferry.

While Jane was on the telephone talking to her mother, a man she later learned was Altum approached her and asked if she knew where an open gas station was. Jane replied, "No, I'm lost too." Some minutes later, while still on the telephone, Jane was grabbed from behind and dragged by her hair from the telephone. Jane recognized her assailant to be the same man (Altum) that she had spoken to minutes before. Jane's mother heard her daughter's screams over the telephone and immediately called the police.

Altum forced Jane into a waiting car driven by Stallone, who had been told by Altum to drive off when Altum returned with the woman. Altum placed Jane on the floor of the front passenger compartment and proceeded to hit her repeatedly. As they drove around, Altum forced Jane to perform acts of fellatio on him while at the same time calling her foul names. This activity continued for about one–half hour, after which Stallone stopped the car.

Altum got out of the car, dragging Jane by her hair to a clearing in the woods. He then threw her down on the ground and ripped off her clothes. Altum proceeded to rape her both vaginally and anally. While raping her, he forced her to perform acts of fellatio on his companion, Stallone. These actions were repeated several times by both defend-

---

[1]We have used a fictitious name for the victim throughout this opinion.

ants.

Altum eventually asked Jane if she had any money. When she said "No," Altum told Stallone to check Jane's coat, which he did, finding nothing. Altum then noticed Jane's pearl and diamond pierced earrings, and he ripped them out of her ears. Then while continually hitting Jane, Altum took Jane's watch from her wrist.

Altum then told Stallone to find Jane's underwear and Stallone complied. Because Jane was menstruating at the time, her underwear had a pad in it and the men laughed about it. Altum placed the underwear over Jane's head and proceeded to rape her again. All the while Altum called Jane foul names. Altum and Stallone then ripped Jane's coat in half and gave it to her. She asked the men for her shoes. Her request caused Altum to laugh, and say "Hey Bruno, this dumb bitch is worrying about her shoes and we have her life." Stallone laughed.

The two men then placed Jane in the car and they drove around for another half hour. Altum and Stallone repeatedly beat Jane during this period of time, and she was forced again to perform acts of fellatio on both men. Altum told Jane that if Stallone was not enjoying the oral sex, Altum would kill her. Altum also threatened to take Jane to a club and have 40 men rape her.

Altum then stopped the car, and while forcing Jane to perform acts of fellatio on Stallone, Altum raped her anally again. Altum then asked her, "What do you want," and Jane said that she wanted her boyfriend. This answer apparently infuriated Altum, who then beat Jane on the head with a flashlight. He pulled her from the car and dragged her by her hair down a bank where he raped her again, both vaginally and anally, and forced her to perform acts of fellatio on him. Altum then dragged her back up the bank by her hair to where Stallone was waiting by the car. Altum told Jane that he would kill her and her parents if she told anyone about the rape. The men put Jane back into the car and Altum drove, but forced Jane again to perform fellatio on Stallone.

Finally, Altum stopped the car and told Jane to get out of the car on her hands and knees. Jane, clothed only in the remnants of her coat, ran through the woods toward a light, which turned out to be a nursing home. She arrived there at 2 a.m. Jane's nose was broken and her tooth chipped. She was covered with scratches, scrapes, bruises and blood, and half of her scalp hair was gone. Stallone and Altum were apprehended some time later.

At his trial, Stallone claimed that he committed the charged crimes under duress. He called the city jail chaplain, who testified that Stallone has a learning disability and is fearful of everyone. The chaplain also testified that Stallone is an extremely dependent person, who is easily dominated by others. A doctor for the Medical Offenders Unit at Western State Hospital testified that Stallone suffers from a "dependent personality disorder," but that Stallone knows right from wrong.

Stallone testified that he was afraid of Altum because Altum had severely beaten Stallone's uncle. Stallone said that on October 11, at about noon, Altum asked him to go to the K Mart with him and Stallone said "Okay." Altum, according to Stallone, purchased a bottle of whiskey and 12 bottles of beer. The two men drove over to Gig Harbor and drank the liquor and smoked marijuana until about 10:30 p.m., at which time Altum abducted Jane. Stallone stated that he participated in the rapes and robbery because of his fear of Altum.

The trial court found Stallone guilty of both counts of rape and one count of robbery. Altum thereafter waived his right to a jury trial and agreed to submit his case to the same trial judge on the evidence adduced at Stallone's trial. On this evidence, the trial court found Altum guilty of both counts of rape and one count of robbery.

At Stallone's sentencing hearing, the trial court calculated Stallone's criminal history, counting each of his three convictions separately. As a result, the trial court determined Stallone's offender score to be 5. An offender score of 5 carries with it a presumptive sentence of 77 to 102

months for the rapes and 15 to 20 months for the robbery. The court sentenced Stallone to an exceptional sentence of 180 months for each rape and 120 months for the robbery. All of the sentences were ordered to run concurrently.

At Altum's sentencing, the trial court calculated Altum's offender score as 6, including in his criminal history the three current counts and one prior nonviolent felony. The presumptive sentence for rape based on an offender score of 6 is 98 to 130 months for the rapes and 33 to 43 months for robbery. The trial court sentenced Altum to an exceptional sentence of 480 months for each count of rape and 120 months for the robbery, with all sentences ordered to run concurrently.

■ Altum and Stallone both assert that the trial court's failure to merge the two counts of rape and one count of robbery into one count of rape resulted in their being placed twice in jeopardy for the same offense in contravention of U.S. Const. amend. 5 and Const. art. 1, § 9. We need not reach this issue because the sentences for these offenses were ordered to run concurrently. A defendant cannot complain about multiple punishments or claim a double jeopardy violation when he receives concurrent sentences on his multiple convictions. *State v. Rienks*, 46 Wn. App. 537, 540, 731 P.2d 1116 (1987).

■ Altum and Stallone next contend that the trial court erred in imposing exceptional sentences because it incorrectly calculated their criminal history by counting each of their current convictions separately. We hold that, notwithstanding the fact that a trial judge is mistaken or ill informed as to the applicable presumptive sentence, an exceptional sentence is not automatically voided. The central inquiry must always be: do the reasons given by the trial judge justify the exceptional sentence and, if so, is the exceptional sentence clearly excessive when it is viewed in relation to the correct presumptive sentence.[2]

---

[2] In *State v. Green*, 46 Wn. App. 92, 730 P.2d 1350 (1986), Division Three of this court reviewed a case in which a trial court erred in determining the defendant's offender score. The court remanded the matter for resentencing because it was unable to determine whether the trial court's exceptional sentence was

Stallone argues that his correct offender score was 0. If that assertion is true, his presumptive sentence would have been 51 to 68 months for the rapes and 3 to 9 months for the robbery. Altum's score, if it is calculated as he proposes, could have been 1,[3] thus giving him a presumptive sentence of 57 to 75 months for the rapes and 6 to 12 months for the robbery.

Even assuming that the trial court erred in calculating the defendants' offender scores, as Altum and Stallone each suggest, we do not believe that it erred in imposing the exceptional sentences that it did. A sentencing court can impose a sentence outside the standard range if it finds "that there are substantial and compelling reasons justifying an exceptional sentence." RCW 9.94A.120(2). RCW 9.94A.390(2) provides a list of illustrative factors that the court may consider. Two of the factors are that "[t]he defendant's conduct during the commission of the current offense manifested deliberate cruelty to the victim" and that "the victim of the current offense was particularly vulnerable". In addition, recent cases have held that, in determining whether an exceptional sentence should be imposed, a court should look to see if the defendant's actions were beyond those normally associated with the crime for which the defendant is being sentenced. *See State v. Ratliff*, 46 Wn. App. 466, 731 P.2d 1114 (1987). In *State v. Dennis*, 45 Wn. App. 893, 895–96, 728 P.2d 1075 (1986), Division Three upheld an exceptional sentence for a rape conviction because the rape was not "typical."

A sentence outside the standard range stands unless the reviewing court finds:

(a) Either that the reasons supplied by the sentencing judge are not supported by the record which was before

---

dependent upon the incorrectly determined offender score. Here, the record does not suggest that the exceptional sentences imposed on Altum and Stallone were determined simply as a multiple of the standard range sentence. The trial judge gave no such indication in his written reasons for the sentence and our review is limited to the reasons given.

[3]Altum had one prior nonviolent felony. He does not contend that this felony should not be considered part of his criminal history.

the judge or that those reasons do not justify a sentence outside the standard range for that offense; or (b) that the sentence imposed was clearly excessive or clearly too lenient.

RCW 9.94A.210(4).

█ The defendants do not suggest that the reasons given by the trial court for imposing the exceptional sentences are unsupported by the record. In fact, the trial court's sentencing findings are not challenged by either defendant, and thus, they are verities. *State v. Weaver,* 46 Wn. App. 35, 42, 729 P.2d 64 (1986). Therefore, we focus initially on the question of whether the reasons given by the trial court justify the exceptional sentences. In doing so, we must independently determine, as a matter of law, whether the trial court's reasons for imposing a sentence outside the presumptive range are "substantially compelling." *State v. Nordby,* 106 Wn.2d 514, 518, 723 P.2d 1117 (1986).

ALTUM

The trial court's finding in support of Altum's exceptional sentence reads:

> That the crimes committed against the victim were excessively violent and brutal, involving repeated acts of forcible intercourse, humiliation, physical assault, and degradation. That the victim was particularly vulnerable because she was dragged into a vehicle by the defendant Roger Altum and was subjected to attack simultaneously by both the defendant and co–defendant Darrell Lee Stallone. That the victim was left naked and bleeding to crawl from the vehicle in a remote area in the middle of the night. The attack upon the victim included threats against the life of the victim and her family, and the victim was subjected to repeated acts of forcible intercourse, oral, anal, and vaginal, by the defendant and co–defendant Darrell Lee Stallone for a period of time in excess of three hours.

This finding graphically summarizes the trial court's reasons for imposing Altum's exceptional sentence. The finding, which was based on the facts established at trial, describes conduct that compels a departure from the

standard sentencing range. Altum not only knew that his victim was vulnerable because she was stranded,[4] but his conduct toward her during the commission of the crimes was so outrageous that it can only be considered extreme and deliberate cruelty. Not only was Jane brutalized and sexually mistreated during her long ordeal, but she was also subjected to severe humiliation. Further, the crime against Jane went beyond the "typical" rape. Like the victim in *State v. Dennis, supra,* Jane was subjected to multiple penetrations and the rape was "in the nature of a 'gang rape', . . ." *Dennis,* 45 Wn. App. at 897.

■ Altum also asserts that the sentence imposed on him is clearly excessive.[5] In reviewing this issue, we must look at whether the trial court abused its discretion in that its decision was "clearly unreasonable, *i.e.,* exercised on untenable grounds or for untenable reasons, or an action that no reasonable person would have taken." *State v. Oxborrow,*

---

[4]RCW 9.94A.390(2)(b) describes the following as an aggravating circumstance:
   The defendant knew or should have known that the victim of the current offense was *particularly vulnerable or incapable of resistance due to extreme youth, advanced age, disability, or ill health.*
(Italics ours.)
   We are mindful of the footnote in *State v. Nordby, supra,* in which it is suggested that in order for the court to rely on a victim's vulnerability as an aggravating circumstance, the vulnerability must be the result of extreme youth, advanced age, disability, or ill health. *Nordby,* 106 Wn.2d at 516 n.1. Because that issue was not before the court in *Nordby,* we consider the statement dicta and thus not binding on this court. Our view is that vulnerability is not limited in such a manner.
   Absent contrary statutory intention, qualifying words and phrases refer to the last antecedent. *Boeing Co. v. Department of Licensing,* 103 Wn.2d 581, 587, 693 P.2d 104 (1985); *Caughey v. Employment Sec. Dep't,* 81 Wn.2d 597, 602, 503 P.2d 460, 56 A.L.R.3d 513 (1972). This rule suggests to us that the qualifying words, "due to extreme youth, advanced age, disability, or ill health", refer to the last antecedent, "incapable of resistance." Under this rule of construction, the qualifying words do not appear to apply to the former antecedent, "particularly vulnerable".

[5]Altum relies heavily on Minnesota's rule that a sentencing judge should not impose an exceptional sentence more than double the standard. *See State v. Evans,* 311 N.W.2d 481 (Minn. 1981). The Supreme Court in this state, however, has rejected the Minnesota doubling rule. *State v. Oxborrow,* 106 Wn.2d 525, 723 P.2d 1123 (1986).

504

106 Wn.2d 525, 531, 723 P.2d 1123 (1986). Under the facts of this case, we cannot say that no reasonable person would have imposed the exceptional sentence imposed on Altum.

Altum also objects to the trial court's consideration of a juvenile conviction in determining the exceptional sentence. Under RCW 9.94A.030(8)(b), the conviction could not be used to determine Altum's criminal history. The court, however, in its oral sentencing decision said that it would consider the conviction for the purpose of exceptional sentencing. We need not decide whether the trial court's consideration of the prior rape was error because even without consideration of the prior rape, the trial court's other reasons for imposing Altum's sentence are sufficient to support the sentence. *See State v. Nordby, supra.*[6]

### STALLONE

In sentencing Stallone, the trial court gave similar reasons for its sentence as it did for Altum, except that the court noted:

> Darrell Lee *Stallone* had blood on his clothing and *had actively participated in having oral, anal, and vaginal intercourse with the victim,* and having been present when co–defendant, Altum, threatened the lives of the victim and her parents, and the defendant, Stallone, made no efforts to assist her, or to leave the scene. The court has found further that the defendant, *Stallone, had forcible oral intercourse with the victim thereafter.* The court finds that the defendant, *Stallone, had ample opportunity to leave the scene, aid the victim, or summon help.*

(Italics ours.)

Stallone argues that the brutalities inflicted upon Jane can only be attributed to Altum, and that they cannot form the basis for the exceptional sentence imposed on him. Although the trial court correctly concluded that Stallone was an accomplice to the robbery and to one rape, Stallone

---

[6]Altum, in his pro se supplemental brief, appears to assert that his sentence should also be lighter because he was intoxicated. RCW 9.94A.390, however, explicitly excludes voluntary use of alcohol as a mitigating factor.

fully participated in a series of rapes, which constituted one count of rape.

Stallone argues that his participation overall was slight. However, the record clearly belies this contention. Stallone beat Jane, abused her verbally and sexually penetrated her numerous times. Stallone's actions taken as a whole justify the imposition of an exceptional sentence. Not only did Stallone assist Altum, but he also personally treated her in a cruel manner. Although he was only an accomplice to the robbery, he and Altum were in the criminal enterprise together, and "we will not split hairs" in an effort to determine the greater or lesser roles of these two participants. *State v. Nelson*, 43 Wn. App. 871, 877, 719 P.2d 961 (1986).

Stallone next argues that the trial court did not consider any mitigating circumstances as it is required to do in determining whether an exceptional sentence is warranted. RCW 9.94A.390. While he correctly observes that the trial court did not find any mitigating factors, the trial court, however, is not required to enter findings regarding mitigation where the aggravating factors entered support the exceptional sentence. *State v. Davis*, 47 Wn. App. 91, 96, 734 P.2d 500 (1987).

In any event, we do not believe that the record supports the existence of mitigating factors. Stallone argues that three mitigating factors exist: that he was under duress, that he was induced by Altum to commit the crime, and that his capacity to conform to the law was significantly impaired by his learning disability and dependent personality. We believe that the trial judge properly rejected the existence of duress and inducement as mitigating factors when it found that, "Stallone had ample opportunity to leave the scene, aid the victim, or summon help." Although the trial judge made no findings on the issue of whether Stallone had the capacity to conform to the law, there is no evidence in the record upon which such a finding could be based. In fact, Stallone's own witness, a doctor at Western State Hospital, stated that Stallone knew right from wrong. This evidence establishes that Stallone had the capacity to

506

conform his actions to the law.

Stallone also argues that the court's imposition of sentences of 180 months for rape and 120 months for robbery was clearly excessive because most of the brutality inflicted on Jane was perpetrated by Altum. In light of Stallone's active participation in the crimes, we cannot say that the imposition of an exceptional sentence roughly 2½ times the standard range, but approximately one–third that of Altum's, constitutes an abuse of discretion.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

PETRICH and WORSWICK, JJ., concur.

Review denied by Supreme Court July 1, 1987.