[No. 34165-1-I.   Division One.   May 28, 1996.]

THE STATE OF WASHINGTON, *Respondent*, v. LARRY D. PARKER, *Appellant*.

*Anna Samuel*; and *Jonathan T. Stier, Eric Broman,* and *Nielsen & Acosta,* for appellant.

*David R. Needy, Prosecuting Attorney,* and *K. Garl Long, Deputy,* for respondent.

AGID, J. — Larry Parker appeals his exceptional sentence for first degree rape of a child in violation of RCW 9A.44.073 and first degree child molestation in violation of RCW 9A.44.083. He contends the trial court miscalculated both the seriousness level of his crimes and his offender score by calculating his standard ranges based on statutory amendments to the Sentencing Reform Act of 1981 (SRA) that became effective after the beginning of the charging period. He also argues that because it is not clear whether the jury relied upon incidents that occurred before or after the amendments became effective, he may have received a more severe sentence for his crimes than was authorized at the time he committed them. We hold that, where the trial court has not used the standard range as a basis for deciding the length of the exceptional sentence, the length is not excessive and the decision to impose an exceptional sentence is justified by the reasons

given, any error in calculating the standard range is harmless. As that was the case here, we affirm.

## FACTS

On September 1, 1993, the State charged Parker with one count of first degree rape and two counts of first degree child molestation based on allegations of ongoing sexual abuse of three of D.W.'s children between 1987 and 1991. D.W. has four children: M, J, K and N. When D.W. met Parker in 1989, she and her children were living in a house in Skagit County. In the summer of 1989, they moved to a shelter in Mount Vernon for about a month and then moved to a house in Burlington. Parker spent the night at these places on a regular basis and often watched D.W.'s children for her. In July 1990, D.W. and her children moved into Parker's house outside of Sedro Woolley. They lived with him until May 1991. The State produced evidence at trial that Parker began sexually molesting M, J and K early in his relationship with their mother.

The first degree rape of a child charge involved M (count 1) and the first degree child molestation charges involved both K (count 2) and J (count 3). The trial court instructed the jury that to find Parker guilty of these crimes, it must find that he committed these acts between 1987 and 1991. The trial court gave a "multiple acts" instruction directing the jury that, to convict Parker, it did not need to "find all of the acts have been proven, but that it [was] necessary that the jury unanimously agree that the same underlying criminal act has been proved." The State did not elect which incidents it was relying on to prove the charges and argued to the jury that it could convict based on any of the incidents in the charging period. By general verdict, the jury found Parker guilty of counts 1 and 2. It did not reach a verdict on count 3.

At sentencing, the State presented a presentence investigation report (PSI) listing Parker's offender score as

3, the seriousness level of count 1 as 11 and the seriousness level of count 2 as 10. The PSI recited the standard ranges as 102–136 months for count 1 and 67–89 months for count 2. The community corrections officer who prepared the PSI recommended an exceptional sentence of 204 months for count 1 and 134 months for count 2, twice the bottom of the standard range for each offense, to be served concurrently. The State relied on the same standard range at sentencing. It asked the court to sentence Parker to the top of the standard range for each offense and to impose an exceptional sentence by running the terms consecutively, for a total of 225 months. The court sentenced Parker to 132 months for count 1 and 84 months for count 2 and imposed an exceptional sentence by ordering that the sentences run consecutively, for a total of 216 months. *See* RCW 9.94A.400 (consecutive sentences may be imposed only under the exceptional sentence provisions).

## DISCUSSION

The State charged Parker with ongoing acts of sexual abuse between 1987 and 1991. In 1990, the Legislature enacted several amendments to the SRA that increased the seriousness level of Parker's crimes and also increased his offender score. Those amendments became effective on July 1, 1990. Parker contends the trial court miscalculated both the seriousness level of his crime and his offender score because it improperly relied on the 1990 amendments even though the State introduced evidence of acts occurring before the effective date of the amendment upon which the jury could have based its verdict. He contends that imposing a more severe sentence under a law that was not in effect when the crimes may have been committed violates the prohibition against ex post facto laws.

Parker relies on *State v. Gurrola*, 69 Wn. App. 152, 848 P.2d 199, *review denied* 121 Wn.2d 1032 (1993), and *State v. Brown*, 55 Wn. App. 738, 780 P.2d 880 (1989), *review denied*, 114 Wn.2d 1014 (1990), to support his argument.

In *Gurrola,* the State charged three counts of first degree rape of a child. It alleged that count 1 occurred between July 1, 1989, and April 1, 1990, and that counts 2 and 3 occurred between April 1, 1990, and February 28, 1991. At sentencing, the court relied on the 1990 amendments to the SRA to determine the seriousness level of the crime, even though the State had alleged acts occurring before the effective date of the amendments. The court imposed an exceptional sentence of 388 months calculated by running two top of the standard range terms consecutively. Division Three of this court held that the trial court erred in relying on the 1990 amendments because the offenses described in count 1 occurred before July 1, 1990, and the State had not proven that the offenses described in counts 2 and 3 occurred after that date. The sentence therefore violated ex post facto prohibitions because it permitted imposition of a more severe punishment. 69 Wn. App. at 158–59. The court reversed the sentence and remanded for resentencing under the earlier version of the statute.

In *Brown,* the defendant was convicted of indecent liberties and statutory rape. The State charged Brown with ongoing criminal activity, some of which pre–dated the effective date of the SRA. As in this case, the jury returned a general verdict. On appeal, Brown challenged his SRA sentence, contending that it violated ex post facto prohibitions because the jury may have convicted him based on acts occurring before the effective date of the Act. Division Two agreed that Brown could not properly be sentenced under the SRA for conduct occurring before its effective date. The State urged the court to uphold the sentences because the jury could have found that all the acts occurred after that date. The court rejected this argument, noting that although most of the evidence supported the State's argument, there was no way to isolate the particular act the jury relied upon. 55 Wn. App. at 750.

Although it assumed that the jury relied on pre–SRA conduct, the court rejected Brown's ex post facto argument. It noted that a change in the law does not violate

the ex post facto prohibition if it does not increase the punishment for an offense and that a court is to look "to the standard of punishment prescribed by the statutes, rather than to the sentence actually imposed" to determine whether the later statute imposes a greater punishment. 55 Wn. App. at 751. The *Brown* court held that there was no ex post facto violation.

> [N]o greater punishment was imposed by the SRA than would have been the case had [the] defendant been sentenced under the indeterminate sentencing system [because h]ad he been sentenced under the indeterminate scheme, his minimum term for pre–SRA crimes would have been fixed by the independent sentencing review board [and] that decision necessarily would have been made by application of SRA standards.

55 Wn. App. at 751.

Parker also relies on *State v. Barberio*, 66 Wn. App. 902, 833 P.2d 459 (1992), *aff'd*, 121 Wn.2d 48, 846 P.2d 519 (1993). Barberio had been convicted of one count each of second and third degree rape for which the court imposed an exceptional sentence. This court reversed his conviction for third degree rape.[1] The State elected not to retry him on that count, and he went back before the trial court for resentencing. The court imposed the same exceptional sentence for the remaining count. Barberio again appealed, contending that because the standard range for his offense was lower at his second sentencing, his sentence should have been reduced proportionately. 66 Wn. App. at 906. We noted that "an exceptional sentence cannot be given when the correct offender score has not been determined." 66 Wn. App. at 906. But we upheld the sentence because the trial court did not base the length of its exceptional sentence for second degree rape on a multiple of the standard range and the defendant conceded that the length was not excessive. 66 Wn. App. at 908. Parker contends *Barberio* stands for the proposition that an error in calculating the underlying standard range

---

[1]*State v. Barberio*, noted at 57 Wn. App. 1070 (1990).

sentence invalidates an exceptional sentence. However, the *Barberio* court was not called upon to decide that issue. *But see State v. Perkins*, 46 Wn. App. 333, 337, 730 P.2d 712 (1986) ("Because a sentence outside the legislatively authorized range may be imposed only if compelling reasons justify an exceptional sentence, it is clear that the court must have the correct sentencing range in mind when imposing sentence.").

In *State v. Altum*, 47 Wn. App. 495, 735 P.2d 1356, *review denied*, 108 Wn.2d 1024 (1987), the appellants claimed that the trial court erred in imposing exceptional sentences because it incorrectly calculated their criminal histories by counting their current convictions separately. Division Two held that

> notwithstanding the fact that a trial judge is mistaken or ill informed as to the applicable presumptive sentence, an exceptional sentence is not automatically voided. The central inquiry must always be: do the reasons given by the trial judge justify the exceptional sentence and, if so, is the exceptional sentence clearly excessive when it is viewed in relation to the correct presumptive sentence.

47 Wn. App. at 500. See *also State v. Hernandez*, 48 Wn. App. 751, 740 P.2d 374 (citing *Altum* and declining to determine whether the trial court had miscalculated the standard range sentence because it was affirming the exceptional sentence), *review denied*, 109 Wn.2d 1020 (1987). The *Altum* court noted that in *State v. Green*, 46 Wn. App. 92, 730 P.2d 1350 (1986), *reversed on other grounds sub nom. State v. Dunaway*, 109 Wn.2d 207, 743 P.2d 1237, 749 P.2d 160 (1987), this court, in a similar situation, remanded because it was unable to determine whether the trial court depended on the incorrectly–determined offender score in imposing its exceptional sentence. *Altum* distinguished *Green* because the exceptional sentences before it were not "determined simply as a multiple of the standard range sentence." 47 Wn. App. at 501 n.2.

As this review of the cases demonstrates, courts

have taken two approaches to deciding whether an exceptional sentence should be reversed where a trial court has miscalculated the standard range sentence for an offense. *Gurrola* and *Brown* suggest that, where the State has charged conduct covered by different sentencing laws, unless all the acts occurred after the effective date of the more severe law, the reviewing court should remand for resentencing under the earlier version of the law. Although the *Barberio* court was not deciding the issue presented here, dicta in that case suggests that an exceptional sentence calculated on an erroneous standard range is invalid and must be remanded. *Perkins* is in accord. *Altum* and *Green*, on the other hand, suggest that the reviewing court should look first at the exceptional sentence to determine whether it is improper and only reach the standard range issue if the range is wrong and it is not clear whether the trial court relied on the miscalculated standard range in imposing the exceptional sentence.

We conclude that the *Altum* court's approach is more appropriate in light of the Supreme Court's recent opinion in *State v. Ritchie*, 126 Wn.2d 388, 392, 894 P.2d 1308 (1995). After *Ritchie*, it is clear that our review of the length of an exceptional sentence is limited by RCW 9.94A.210(4), which mandates that a sentence outside the standard range may be reversed only if the trial court's reasons do not justify it or the sentence is clearly excessive.[2] Sentence length is not an issue unless it is based on an improper reason or is so long that it shocks the conscience of the reviewing court. 126 Wn.2d at 396; *State v. Ross*, 71 Wn. App. 556, 571–72, 861 P.2d 473, 883 P.2d 329 (1993), *review denied*, 123 Wn.2d 1019 (1994). Therefore, where the reasons support imposing an exceptional

---

[2]RCW 9.94A.210(4) provides that a reviewing court should uphold an exceptional sentence unless it finds "(a) [e]ither that the reasons supplied by the sentencing judge are not supported by the record which was before the judge or that those reasons do not justify a sentence outside the standard range for that offense; or (b) that the sentence imposed was clearly excessive or clearly too lenient."

sentence and its length is not clearly excessive, the standard range is irrelevant to the validity of the sentence.[3]

That being said, however, we hasten to point out that we believe there is an exception to that rule where the trial court calculates the length of the exceptional sentence based on a faulty standard range. Thus, we disagree with *Altum* to the extent it can be read as holding that a miscalculated standard range can never be the basis for reviewing an exceptional sentence so long as the trial court's reasons for imposing the sentence are justified. In our view, where a trial court clearly bases an exceptional sentence on a miscalculated standard range, for example, when it merely doubles or triples the top of the standard range, and it is not clear from the record that it would impose the same sentence even if it were aware of the proper standard range, the case would probably have to be remanded. In those circumstances, we would normally not be able to tell whether the trial court would impose the same sentence if it were aware of the error. *Accord Barberio*, 66 Wn. App. at 907.[4]

We do not need to remand in this case because it is clear that the trial court did not base its sentence on a multiple of the miscalculated standard range. Parker argues that the trial court relied on the miscalculated offender score as a departure point for the exceptional sentence because, according to him, it simply sentenced him to the top end of the standard range for each offense and ran the sentences consecutively. We take issue with Parker's math. The top end of the miscalculated standard range was 136 months for count 1 and 89 months for count 2. Had the trial court simply added the two, it would have imposed a sentence of 225 months, the sentence recommended by the State. Instead, it imposed a sentence of 132 months for

---

[3]Parker does not argue that the exceptional sentence imposed here was clearly excessive and, under *Ritchie*, it was not.

[4]We note that, because the trial court in *Gurrola* relied on the standard range to impose its exceptional sentence, a remand would be required under our holding here as well.

count 1 and 84 months for count 2 to arrive at a sentence of 216 months, exactly 18 years. From its oral statements, it is clear the trial court intended to impose an 18–year sentence and we are confident the court would impose the same sentence if we were to remand.

The trial court based Parker's exceptional sentence on the following aggravating circumstances: the long term pattern of sexual abuse of both victims, the particular vulnerability of the victims, Parker's abuse of the trust relationship with the victims' mother and the victims and a "level of violence in manipulating [the] victims that is not normally seen in these cases." Parker does not challenge the trial court's reasons for imposing an exceptional sentence, and we find they are sufficient to justify the sentence.

Affirmed.

COLEMAN and COX, JJ., concur.

Review granted at 130 Wn.2d 1007 (1996).