# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON, )
) No. 69227-5-I
Respondent, )
) DIVISION ONE
v. )
) UNPUBLISHED OPINION
JAMES EDWARD HUDEN, )
)
Appellant. ) FILED: February 3, 2014
)

APPELWICK, J. — Huden was convicted of first degree murder and given an exceptional sentence based on his victim's particular vulnerability. Huden appeals his sentence, arguing that there was insufficient evidence to support the aggravating factor. He also appeals his conviction, arguing that the trial court abused its discretion in allowing the jury access to a video of his police interrogation during deliberations and that the prosecutor committed misconduct. We affirm.

## FACTS

On December 27, 2003, Russel Douglas was found dead in a car on Whidbey Island. Douglas had a gunshot wound to the head, apparently a homicide. The police investigation ultimately led to James Huden, due in part to information from Huden's close friend, William Hill. The State charged Huden with first degree murder.

At trial, Hill testified that Huden said he and a woman named Peggy Thomas killed a man. Huden told Hill that they chose Douglas as a victim, because Huden thought Douglas was abusive to his family. Huden's stepfather abused him, and Huden wanted to kill someone that fit that modus operandi. Under the ruse of giving Douglas a gift for his wife, Thomas lured Douglas to a dead end road in a sparsely populated area

of Whidbey Island. Huden was waiting there. When Douglas arrived, Huden approached the car and shot Douglas in the forehead.

The State argued that Douglas was particularly vulnerable to the crime of first degree murder, because he was still buckled into his car when Huden approached him and because he had an unsuspecting mindset. The jury found Huden guilty as charged, including the aggravating factor of particular vulnerability. Huden appeals.

## DISCUSSION

Huden challenges his exceptional sentence, arguing that there was insufficient evidence to support the aggravating factor of particular vulnerability. He also argues that the statute establishing the aggravating factor is unconstitutionally vague. In addition, Huden appeals his conviction, alleging that the trial court abused its discretion in permitting the jury access to a video of his interrogation. He further asserts that the prosecutor committed multiple instances of misconduct.

I. Particularly Vulnerable Victim Aggravating Factor

Huden argues that the trial court improperly imposed an exceptional sentence, because there was insufficient evidence to establish particular vulnerability. We review the fact finder's reasons for imposing an exceptional sentence under a clearly erroneous standard. State v. Law, 154 Wn.2d 85, 93, 110 P.3d 717 (2005). Under this standard, we reverse the findings only if substantial evidence does not support them. State v. Bluehorse, 159 Wn. App. 410, 423, 248 P.3d 537 (2011). "Substantial evidence" is sufficient evidence to "'persuade a fair-minded person of the truth of the declared premises.'" Id. at 423-24 (quoting State v. Jeannotte, 133 Wn.2d 847, 856, 947 P.2d 1192 (1997)).

2

The jury must find beyond a reasonable doubt that there is a factual basis for an aggravated sentence. RCW 9.94A.537(6); State v. Suleiman, 158 Wn.2d 280, 292, 143 P.3d 795 (2006). RCW 9.94A.535(3)(b) permits a sentence above the standard range where the victim was particularly vulnerable or incapable of resistance and the defendant knew or should have known that fact. For a victim's vulnerability to justify an exceptional sentence, the State must also show that the vulnerability or inability to resist was a substantial factor in the commission of the crime. Suleiman, 158 Wn.2d at 291-92.

The evidence at trial demonstrated that Douglas was shot while seated in his car. The angle of the wound indicated that the shot came from the driver's side. The door was closed, but the window was down several inches. The range of fire was between several inches and a couple of feet. Douglas was in the driver's seat, slumped over with his hands on his thighs. The keys were still in the ignition, the car was in reverse, and the emergency brake was up to his right. His seatbelt was across his body with the buckle unhooked. Based on the blood spatter, however, Douglas was shot with his seatbelt still attached.

The evidence further showed that Huden and Thomas lured Douglas to the location under false pretenses. Thomas had told Douglas that she had a gift for his wife and asked him to meet her. When Douglas left that day, he told his wife that he was going to run errands. When Douglas arrived at the meeting spot, Huden shot him.

The evidence also demonstrated that Huden attacked Douglas in a relatively remote location. Wahl Road is a dead end road outside of Langley city limits and does not get much traffic. The area has multiple residents, but is sparsely populated overall.

3

Douglas's car was parked in an opening in the vegetation off Wahl Road that was visible to neighboring homes and passersby.

In closing, the prosecutor argued that Douglas was more vulnerable than a typical victim of first degree murder:

> He is in two ways. Obvious way: He is seat belted in his car. He's got bucket seats. He's got a center console. Shift lever. Parking brake's up. His legs are under the steering wheel. . . .

> . . . .

> And [Douglas] was particularly vulnerable in another way. . . .

> . . . [H]e's unsuspecting. And he has no reason to think twice when the man coming up to his car approaches the car. He has no reason to flinch, to duck, to start the motor, to take the brake off, to unbuckle the seatbelt because he's been duped into thinking that this is just the average thing that a husband might do on the day after Christmas. [He was b]oth vulnerable and incapable of resistance...

In addition to Douglas's seatbelt and unsuspecting mindset, the State's briefing argued that his remote location contributed to his particular vulnerability

Huden does not allege that the jury was not properly instructed on the law in this case. Rather, he contests the jury's factual finding by special verdict that particular vulnerability existed.[1] He argues that Douglas was not particularly vulnerable to a sudden gunshot to the head. This is so, he contends, because the suddenness of such an attack would prevent any victim from resisting. He relies on State v. Jackmon, 55 Wn. App. 562, 569, 778 P.2d 1079 (1989), and State v. Serrano, 95 Wn. App. 700, 712,

---

[1] At trial, the jury was instructed to consider whether "[Huden] knew or should have known that [Douglas] was particularly vulnerable or incapable of resistance." The instructions elaborated that a victim is particularly vulnerable if "he or she is more vulnerable to the commission of the crime than the typical victim of murder in the first degree. The victim's vulnerability must also be a substantial factor in the commission of the crime."

715, 977 P.2d 47 (1999), both of which reversed a finding of particular vulnerability in cases involving victims shot from behind with a firearm.

In Jackmon, the victim was shot in the back of the neck while seated at table in his office. 55 Wn. App. at 564-65, 567. The trial court made a finding of particular vulnerability based in part on the fact that the victim was disabled by a cast on his ankle. Id. at 565. The Court of Appeals reversed, noting that there was no indication the victim's disability rendered him more vulnerable to the assault that an able-bodied person would have been. Id. at 567. No evidence established that the defendant knew about the leg injury or that the cast was visible to the defendant prior to committing the crime. Id. Further, it was highly unlikely an able-bodied person would have been able to escape. Id.

In Serrano, the victim, an orchard worker, was above the ground in an orchard ape[2] when he was shot multiple times in the back. 95 Wn. App. at 710-11. The trial court found that the victim could not run or protect himself and that he was particularly vulnerable. Id. at 711. The court of appeals reversed. Id. at 712, 715. It reasoned that, though the victim may have been vulnerable because he was above the ground in an orchard ape, the record did not suggest this was a substantial factor in the shooting. Id.

Neither case stands for the proposition that an exceptional sentence based on victim vulnerability is necessarily unavailable when the victim is attacked with a firearm. Rather, in each case, one of the key components necessary to uphold the exceptional sentence was not supported in the record below.

---

[2] An orchard ape is a caged platform on a hydraulic lift powered by a tractor. Serrano, 95 Wn. App. at 711.

Here, the victim was an able-bodied man like the victim in Serrano. But, the finding of particular vulnerability or inability to resist is not limited to the physical characteristics of the victim. State v. Ross, 71 Wn. App. 556, 565, 861 P.2d 473, 883 P.2d 329 (1993). We recognized particular vulnerability when the defendant knew the victim was alone and stranded. State v. Altum, 47 Wn. App. 495, 503, 735 P.2d 1356 (1987), overruled on other grounds by State v. Parker, 132 Wn.2d 182, 937 P.2d 575 (1997). Similarly, we recognized particular vulnerability where the defendant picked his victims based on the fact that they worked alone in offices open to the public. Ross, 71 Wn. App. at 565. And, we recognized that attacking women alone in their homes while they slept left them less able to resist and more vulnerable than a person awake. State v. Hicks, 61 Wn. App. 923, 931, 812 P.2d 893 (1991).

The record here supports a finding that Huden knew or should have known that Douglas was particularly vulnerable or unable to resist the attack. Like the victims in Altum, Ross, and Hicks, Douglas had been isolated by Huden. Douglas was asked to meet at a fairly remote location that required he come in a vehicle. He was alone when he was attacked. Like the victims in Hicks and Serrano, Douglas was unable to resist the attack. He had set the parking brake and turned off the vehicle. He was belted into his vehicle, with little ability to move between the door, wheel, and console. He was approached and shot before he could exit the vehicle.[3]

---

[3] The State also relied on the argument that Douglas was unsuspecting. However, the victim was unsuspecting in virtually every published case that involved this exceptional sentencing option. See, e.g., Serrano, 95 Wn. App. at 711 (victim shot from behind); Ross, 71 Wn. App. at 564 (defendant gained entry using ruse); Hicks, 61 Wn. App. at 931 (victim asleep); Jackmon, 55 Wn. App. at 567 (victim shot in back of neck); Altum, 47 Wn. App. at 497 (victim grabbed from behind). If that factor alone was

And, like Hicks—but unlike Jackmon and Serrano—the record here supports a finding that Douglas's particular vulnerability or inability to resist were substantial factors in the commission of the crime, based on the way Huden set up the meeting and crime. Taken together, these circumstances provide sufficient evidence to support the jury's finding of particular vulnerability.[4]

We hold that the particularly vulnerable victim aggravator properly supports imposition of the exceptional sentence.

## II. Vagueness of Aggravating Factor Statute

Huden also challenges the constitutionality of RCW 9.94A.535(3)(b), which establishes the "particularly vulnerable" aggravating factor. He argues that the statute is unconstitutionally vague.

However, in State v. Baldwin, the Washington Supreme Court held that sentencing guidelines are not subject to due process vagueness analysis. 150 Wn.2d 448, 461, 78 P.3d 1005 (2003). This is because sentencing guidelines do not define conduct or allow for arbitrary arrest and prosecution. Id. at 459.

Huden maintains that the U.S. Supreme Court's decision in Blakely v. Washington nullifies the Baldwin rationale. 542 U.S. 296, 303-04, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004). In Blakely, the Court ruled that a judge may not impose a sentencing enhancement without either findings by the jury or a stipulation by the defendant. See id.

---

enough, one would have expected it to have been discussed in Jackmon and Serrano, since it would have resulted in affirmance rather than reversal.

[4] Because there is sufficient evidence to support a finding of particular vulnerability, the trial court had substantial and compelling reasons to support Huden's exceptional sentence. See RCW 9.94A.535.

7

Huden argues that this established a due process right that encompasses vagueness challenges to sentencing enhancements. He focuses on the Blakely Court's treatment of aggravating factors as equivalent to elements of a crime. But, Blakely did not destroy any distinction between aggravating factors and elements. In State v. Powell, a post-Blakely decision, a majority of the Washington Supreme Court concluded that aggravated sentencing factors are the functional equivalent of essential elements that must be charged in an information. 167 Wn.2d 672, 690, 223 P.3d 493 (2009), (Stephens, J. concurring), overruled by State v. Siers, 174 Wn.2d 269, 274 P.3d 358 (2012). But, the court subsequently overruled that decision:

> [W]e are of the view that the decision a majority of this court reached in Powell on the issue of whether aggravating factors must be charged in the information is incorrect. . . . We, therefore, overrule this court's decision on that issue and adopt the position advanced by the lead opinion in Powell to the effect that, so long as a defendant receives constitutionally adequate notice of the essential elements of a charge, "the absence of an allegation of aggravating circumstances in the information [does] not violate [the defendant's] rights under article I, section 22 of the Washington Constitution, the Sixth Amendment to the United States Constitution, or due process."

Siers, 174 Wn.2d at 276 (alterations in original) (quoting Powell, 167 Wn.2d at 687).

Blakely focused on the right to a jury trial. See 542 U.S. at 301-02. This is distinct from the vagueness doctrine, which exists to provide notice to the public and protect it from arbitrary state intrusion. Baldwin, 150 Wn.2d at 458. The rule in Baldwin still stands.

Huden may not bring a vagueness challenge to the aggravating factor statute.

III.    Jury Access to Interrogation Video During Deliberations

Huden argues that the trial court improperly permitted the jury unlimited access to a video of his interrogation.  At trial, the prosecution introduced the video as an exhibit and played it for the jury during trial.  The court provided the jury with a video player to watch it again during deliberations.

The trial court has discretion to allow the jury to take video tape recorded exhibits to the jury room.  State v. Castellanos, 132 Wn.2d 94, 100, 935 P.2d 1353 (1997).  In Castellanos, the trial court provided the jury a playback machine during deliberations so it could review video tape recordings of drug transactions.  Id. at 96-97.  The appellate court affirmed this exercise of discretion, finding that the jury's unlimited access to the recordings alone did not prove that the jury gave the exhibit undue prominence.  Id. at 102.  The court also distinguished between testimonial and nontestimonial exhibits, suggesting that the former raised problems of undue emphasis, while the latter should be treated as any other exhibit.  See id. at 101-02.

Huden focuses on this distinction, arguing that the video of his police interview was testimonial.  He cites to State v. Elmore, a case in which the trial court permitted the jury to review video tapes of the defendant's confession and police interview.  See 139 Wn.2d 250, 296, 985 P.2d 289 (1999).  Huden relies on the dissent in that case to assert that the video of his own interview was testimonial.  But, the Elmore majority expressly found the taped confession and interview to be nontestimonial.  Id.

The record here does not contain the video tape or a transcript of Huden's interrogation.  But, under Elmore, the trial court did not abuse its discretion in providing

the jury unlimited access to a video tape of the defendant's police interrogation and confession. Huden offers no evidence to distinguish the present case.

Based on the evidence presented, we do not find that the trial court abused its discretion.

IV.    Prosecutorial Misconduct

Huden alleges multiple instances of prosecutorial misconduct. Prosecutorial misconduct is grounds for reversal where the conduct is both improper and prejudicial. State v. Monday, 171 Wn.2d 667, 675, 257 P.3d 551 (2011). This court determines the effect of a prosecutor's improper conduct in the context of the full trial, including the evidence presented or addressed in argument, the issues in the case, and the jury instructions. State v. McKenzie, 157 Wn.2d 44, 52, 134 P.3d 221 (2006). Generally, a prosecutor's comments are prejudicial only where there is a substantial likelihood that they affected the jury's verdict. Monday, 171 Wn.2d at 675.

A. Comments On Huden's Demeanor

Huden first argues that the prosecutor improperly inferred that he was guilty by commenting on Huden's demeanor. Prosecutors have wide latitude in closing argument to draw reasonable inferences from the evidence and express those inferences to the jury. State v. Stenson, 132 Wn.2d 668, 727, 940 P.2d 1239 (1997). But, counsel must refrain from expressing a personal opinion. State v. Rivers, 96 Wn. App. 672, 674-75, 981 P.2d 16 (1999).

Huden challenges the prosecutor's comments about his interaction with the police. In closing, the prosecutor described Huden's reaction to the police showing up at his Florida home, noting that Huden did not seem surprised, despite the fact that the

detectives came all the way from Washington. The prosecutor also commented on Huden's behavior during his interrogation, pointing out his "[v]ery flat affect." The prosecutor further noted that Huden never expressly denied having killed Douglas. None of these statements contained opinions—they were descriptions of the evidence established at trial. At most, they were implications of inferences that counsel wished for the jury to draw. This was not improper.

B. Comments On Huden's Credibility

Huden also argues that the prosecutor improperly commented on his credibility. Specifically, he contests the prosecutor's statement about "some actual information that [Huden] gave that was reliable here." He contends that this improperly insinuated that he had lied to the police.

Prosecutors may not express their personal opinions of the defendant's credibility. State v. Calvin, 176 Wn. App. 1, *18-*19, 302 P.3d 509, ___ P.2d ___ (2013). But, there is no prejudicial error unless it is "'clear and unmistakable'" that counsel is expressing a personal opinion. Id. at *19 (quoting State v. Brett, 126 Wn.2d 136, 175, 892 P.2d 29 (1995)). In Calvin, the prosecutor said the defendant was "'just trying to pull the wool over your eyes.'" Id. The court found that this was an explanation of the evidence, rather than a personal opinion. Id.

Taken out of context, the prosecutor's statement here may seem like an insinuation that Huden was an unreliable witness. But, the prosecutor's comment directly preceded a list of evidence that corroborated Huden's statements during his interrogation. The prosecutor did not assert that Huden had otherwise lied, thus

11

juxtaposing the following reliable statements. See id. This was not a clear and unmistakable opinion of the defendant's credibility.

C. Comments On Huden's Silence

Huden further asserts that the prosecutor improperly commented on his silence during his police interview. In closing, the prosecutor reviewed statements that Huden made during his interrogation, and then pointed out some details that Huden had not mentioned. The prosecutor noted that the absence of these details was "[p]retty significant."

The Fifth Amendment forbids comment by the prosecution on a defendant's refusal to testify. Griffin v. California, 380 U.S. 609, 614, 85 S. Ct. 1229, 12 L. Ed. 2d 106 (1965). But, this was not a comment on Huden's silence. In fact, the prosecutor explicitly stated that Huden spoke to the police. The prosecutor was merely drawing inferences from the contents of Huden's statement. This was not improper.

D. Vouching For State's Witnesses

Huden also challenges the prosecutor's comments about the State's witnesses. It is improper for a prosecutor to vouch for the veracity of a witness. State v. Ish, 170 Wn.2d 189, 196, 241 P.3d 389 (2010). But, counsel may comment on a witness's veracity so long as it does not express a personal opinion and does not argue facts beyond the record. State v. Smith, 104 Wn.2d 497, 510-11, 707 P.2d 1306 (1985). In State v. Warren, the court found that a prosecutor's actions were proper when he argued that certain details had a "'ring of truth'" to them. 165 Wn.2d 17, 30, 195 P.3d 940 (2008). The court found that the statement was an inference based on specific details from trial, rather than the prosecutor's personal opinion. Id.

12

Here, the prosecutor made multiple statements about the strength of the State's witnesses' testimony. He said that their testimony combined was "so strong, so overwhelming, in and of themselves they prove beyond a reasonable doubt." He also called Hill's testimony "uncontroverted," "unassailable," and "unimpeachable," stating that it had "[every] indicia of reliability." The prosecutor emphasized that Hill was Huden's best friend, and that it was very difficult for Hill to come forward. As in Warren, these comments were mere inferences from the evidence at trial. The prosecutor did not state his own belief about witness credibility, but remarked on the strength of the evidence presented at trial and the lack of reason to doubt it.

Huden also challenges the prosecutor's comments that two State witnesses were "heroes" for testifying against Huden. During closing, the prosecutor said:

> But this case is also about heros [sic].
>
> I submit to you that Bill Hill is a hero. Bill was put in a position he did not ask to be put in, he did not want to be put in, and it was very difficult for him. He had to choose between loyalty to his best and closest friend and doing the right thing and doing what his conscience told him to do.
>
> . . . .
>
> Now Keith Ogden, I submit, is also a hero in a similar situation. He didn't have the closeness with Jim Huden that Bill Hill had; but nevertheless, Keith found himself in possession of a gun that he had good reason to believe . . . was used to kill a man. And Keith, too, had to struggle with that a little bit. But he knew what he had to do because his conscience told him what to do.

(Emphasis added.) The use of the word "hero" crossed into the realm of personal opinion.

However, Huden did not object to these comments at trial. Where a defendant fails to object to improper conduct, the error is considered waived unless the conduct

13

was so flagrant and ill-intentioned that it creates an enduring prejudice that could not have been neutralized by a curative instruction. State v. Brown, 132 Wn.2d 529, 568, 940 P.2d 546 (1997). In Brown, the prosecutor stated that the defendant's crime was "'evil'" and "'screams out for the death sentence.'" Id. The court held that, though the words were dramatic, the prosecutor's general statements were supported by the evidence and his conduct did not warrant reversal. Id. at 568-69.

Conversely, in State v. Belgarde, the prosecutor told the jury that the defendant was "'strong in'" the American Indian Movement, whom he described as "'a deadly group of madmen'" and "'butchers, that killed indiscriminately Whites and their own.'" 110 Wn.2d 504, 506-07, 755 P.2d 174 (1988) (emphasis omitted). The prosecutor also called the group "militant" and analogized them to notorious political leaders. Id. at 507. The court found that those statements were so prejudicial that a curative instruction would have been ineffective. Id. 507-08.

Like the descriptions in both Brown and Belgarde, the word "hero" does have emotional appeal. But, it does not rise to the inflammatory level of the statements in Belgarde. And, as in Brown, the prosecutor used the word in context of a statement supported by the evidence: here, the witnesses' difficult position of testifying as Huden's friends. In the face of the strong evidence against Huden, it is unlikely that this brief complimentary description of the State's witnesses prejudiced the outcome of his trial. This error does not warrant reversal.

### E. Personal Opinion Of Huden's Guilt

Finally, Huden protests that the prosecutor improperly expressed his opinion of Huden's guilt. It is improper for a prosecutor to state a personal belief about the guilt or innocence of the accused. State v. Emery, 161 Wn. App. 172, 192, 253 P.3d 413 (2011), aff'd, 174 Wn.2d 741, 278 P.3d 653 (2012). But, the court will not find prejudicial error unless it is clear that counsel is expressing a personal opinion rather than an inference from the evidence. Id. at 192-93. In Emery, the court declined to find prejudicial error where the prosecutor said that "'the truth of the matter'" was that the defendant was guilty. Id. at 192. The court noted that this statement came after discussing the State's evidence, and was only an inference therefrom. Id. at 193.

Here, while discussing the special verdict forms, the prosecutor told the jury that it would consider aggravating circumstances "if you find Mr. Huden guilty -- And I strongly argue that that is the case and the standard of evidence and proof has been met." This statement, as in Emery, came after the prosecutor laid out the State's evidence, and was merely an inference that he wished for the jury to draw. This did not constitute error.

We affirm.

WE CONCUR:

15